ARKANSAS CITY BANK, Respondent, v. ABNER C. CASSIDY *et al.*, Appellants.

St. Louis Court of Appeals, December 8, 1896; Motion for Rehearing Overruled May 11, 1897.

1. **Chattel Mortgage**: INNOCENT PURCHASER: TITLE: LAW OF SITUS: LAW OF FORUM. In controversies between the mortgagor and an innocent purchaser, the *lex situs* of the property will govern in determining the validity of the plaintiff's title under the mortgage; and if the law of the *situs* can not be determined, then the law of the forum as determined by natural justice will apply.

2. ———: LAW OF FORUM: INSTRUCTION. But in determining the law of the forum as indicative of natural justice, an instruction that plaintiff's title to the mortgaged property must be determined by the common law rule as to chattel mortgages, upon the assumption that the statute of Missouri in reference to fraudulent conveyances (R. S. 1889, sec. 5176) has no application where the property is situated in this state and the mortgagor lives in another, was erroneous.

3. ———: CONVERSION. To constitute a conversion of the mortgaged property, it was not necessary that the defendants should have had complete manual control of the property; it was sufficient if they intermeddled with or exercised any dominion over it, either alone or in connection with others.

4. ———: ———: LIABILITY OF FACTORS AND AGENTS. Nor was it necessary, in order to hold defendants for conversion of the mortgaged property, that they should have used or appropriated to their own use the proceeds of sale of the property; they were liable for conversion as factors and agents.

5. ———: ———: LIABILITY OF BROKERS. Though generally brokers are treated as having incurred no liability for their intervention, they may become liable for conversion by buying and paying for the converted property in the capacity of agents.

*Appeal from the St. Louis City Circuit Court.* —HON. JACOB KLEIN, Judge.

REVERSED AND REMANDED.

*McDonald & Fauntleroy* and *Andrew M. Sullivan* for appellants.

The facts in this case fail to show that appellants were guilty of conversion of the cattle in question. As to what constitutes conversion, see 24 Am. St. Rep. 795, and citations; Big. Lead. Cas. on Torts, p. 428, and citations.

The evidence fails to show that appellants ever asserted title to the cattle, or ever did any act equivalent to an assertion of title. It also fails to show that they ever had possession of the cattle, either actually or constructively. *Fowler v. Hollins*, L. R. 72, B. 616; *Cuckson v. Winter*, 2 Man. & R. 313; *Davis v. Buffum*, 51 Me. 160; *Mills v. Van Camp*, 41 Mich. 645; *Burnside v. Twitchell*, 43 N. H. 390.

The evidence fails to show that defendants ever exercised any control over the cattle, or over their disposition or shipment by the purchaser, but on the contrary "in the ordinary course of trade," as a mere "conduit" from the purchaser to the vendor, to propose a price and pay the same. *Greenway v. Fisher*, 1 Car. & P. 190; *Fondles v. Willoughby*, 8 M. & W. 540; *Bank v. Rymill* (C. A. 1881), 44 L. T. 769; *Roach v. Turk*, 9 Heisk. (Tenn.) 708.

It being admitted that "no actual or continued change of possession followed the giving of such mortgage," and that the cattle remained "in the possession of the mortgagors," the respondent was not entitled to recover herein. R. S. Mo. 1889, sec. 5176.

The property being out of the state where the papers were executed, the *lex situs* governs. Jones on Chat. Mort. 305, and cases cited; *Denny v. Faulkner*, 22 Kan. 89, 99; *Golden v. Cockril*, 1 *Id.* 259; *Pyeatt v. Powell*, 51 Fed. Rep. 551; *Iron Works v. Warren*, 76 Ind. 512; *Clark v. Tarbell*, 58 N. H. 88; *Hardaway v.*

*Semmes*, 38 Ala. 657; *Green v. Van Buskirk*, 7 Wall. 139; *Rice v. Courtis*, 32 Vt. 460; *Martin v. Potter*, 34 *Id.* 87; *Whitman v. Connor*, 40 N. Y. Sup. 339; *Guillander v. Howell*, 35 N. Y. 57; *Runyon v. Groshon*, 12 N. J. Eq. 86; *Beystone v. Burgett*, 10 Ind. 28; *Edgerly v. Bush*, 81 N. Y. 199; *Keller v. Paine*, 107 *Id.* 83.

But there being no evidence as to the *lex situs*, the law of the forum governs. *Pyeatt v. Powell, supra; Flato v. Mulhall*, 72 Mo. 522; *Bain v. Arnold*, 33 Mo. App. 631; *White v. Chaney*, 20 *Id.* 389; *Silver v. R. R.*, 21 *Id.* 5; *Crone v. Dawson*, 19 *Id.* 214; *Selking v. Hebel*, 1 *Id.* 340.

As the territory within the confines of the boundaries of Indian Territory was never subject to the laws of England, there can be no presumption that the common law prevails there. *Bain v. Arnold*, 33 Mo. App. 631; *Flato v. Mulhall*, 72 Mo. 522, and other cases cited above. This is not only admitted, but indicated by act May 2, 1890, putting common law in force as declared by statutes of Nebraska and Arkansas. 26 U. S. St. at Large, p. 94, sec. 31. See, also, *Davison v. Gibson*, 55 Fed. Rep. 443; *Holland v. Pack*, Peck. (Tenn.) 151; *R. R. v. O'Laughlin*, 49 Fed. Rep. 440; *Carter v. Good*, 50 Ark. 155.

There having been no change of possession of the property, and no record of the mortgage, as required by the law of the forum, the mortgage is void as to third parties. R. S. 1889, sec. 5176; *Flato v. Mulhall, supra; Bain v. Arnold, supra*, and other citations above. See, also, *Golden v. Cockril*, 1 Kan. 259; *Swiggert v. Dodson*, 38 *Id.* 702–708.

*Warwick Hough* and *Warwick M. Hough* for respondent.

Plaintiff was the owner and entitled to the possession of the cattle. *Dean v. Davis*, 12 Mo. 112; *Lacy v.*

*Giboney*, 36 *Id.* 320; *Pace v. Pierce*, 49 *Id.* 393; *Bowers v. Benson*, 57 *Id.* 26; *State ex rel. v. Adams*, 76 *Id.* 612; Jones on Chat. Mortg. [4 Ed.], sec. 699.

The mortgage was duly recorded in the proper office in Cowley county, Kansas, of which county both mortgagors were residents. *McVey v. English*, 30 Kan. 371; *Swiggert v. Dodson*, 38 *Id.* 702.

It was not necessary that the bill of sale should be recorded. *Bank v. Morris*, 114 Mo. 261.

The law of the domicile or place of contract governs as to the validity and effect of a mortgage. Jones on Chat. Morg. 299; *Bank v. Morris, supra; Edgerly v. Bush*, 81 N. Y. 199.

The mortgage was good between the parties in Kansas, and by the laws of Kansas such transaction is made good against third parties in Kansas by having the mortgage recorded in the county in which the mortgagors at the time resided. Gen. St. Kan. 1889, sec. 3903; *Denny v. Faulkner*, 22 Kan. 99; *Van Buskirk v. Warren*, 34 Barb. 470.

The mortgage being good in Kansas not only *inter partes*, but against all third persons, it must be held in this forum to have followed the property in Illinois, where the conversion took place. *Bank v. Morris, supra.*

The common law, as provided in section 6561, Revised Statutes, 1889, applies as the law of the forum, or as indicative of natural justice. Applying this rule to the facts in this case, the mortgage must be held good as against creditors and third parties, though it was not registered and there was no change of possession at the time it was executed and delivered. *Pyeatt v. Powell*, 51 Fed. Rep. 553; Jones on Chat. Mort., secs. 324, 325.

The acts of defendants amounted to conversion. *Koch v. Branch*, 44 Mo. 542; *Williams v. Wall*, 60 *Id.*

351; *Bank v. Metcalf,* 29 Mo. App. 390; *Same v. Same,* 40 *Id.* 494; *Spraight v. Howell,* 39 N. Y. 441.

It is not essential to a conversion that the defendants should have the complete manucaption of the property. *Bolling v. Kirby,* 24 Am. St. Rep. 792.

BIGGS, J.—There is no substantial conflict in the evidence in this case. The facts out of which the litigation has arisen are these: On the twenty-second day of October, 1889, John Beach and Daniel F. Feagins purchased from B. F. Irby and one Warren, a lot of Texas cattle, which were then on a "ranch" in the Indian Territory. The "ranch" had been leased by Beach and Feagins from the Indians. For the purchase money Beach and Feagins on that day executed to Warren and Irby their several negotiable notes, aggregating $26,040, and payable eight months after their date. To secure these notes Beach and Feagins executed and delivered to Warren and Irby a chattel mortgage on the property sold, which provided that until condition broken the property conveyed should remain in the possession of Beach and Feagins. On the same day and in pursuance of a previous understanding between all parties, the plaintiff bank purchased the notes from Warren and Irby. For the better security of the debt, Beach and Feagins executed and delivered to plaintiff's cashier a bill of sale of the mortgaged property. This instrument was also dated on the twenty-second day of October. Beach and Feagins lived in Cowley county, Kansas, but the cattle were, and remained on the "ranch" in the Indian Territory. The chattel mortgage was recorded in Cowley county, Kansas, on the twenty-sixth day of February, 1890. The law of Kansas provides that unless a chattel mortgage is forthwith recorded either in the county where the property is situated, or if the mortgagor be a resi-

dent of the state then in the county where he resides, it shall be void as to creditors of the mortgagor or subsequent purchasers and mortgagees in good faith. There is no registry law in the Indian Territory, and no statute or custom governing chattel mortgages. The bill of sale was not recorded.

The notes were not paid at maturity, and the plaintiff began immediately to ship the cattle to market, applying the proceeds of the sales as credits on the notes. When the indebtedness had thus been reduced to $10,500 there remained about four hundred of the cattle on the "ranch." Beach and Feagins surreptitiously sold ninety-six of these to one McDowell. McDowell drove them into Cowley county, Kansas, and from there he shipped them to the National Stock Yards in East St. Louis, Illinois, for sale. They were consigned to the firm of Little & Broderick, a firm engaged in the cattle commission business. When the cattle arrived at the National Stock Yards they were taken in charge by the employees of the stock yards company and were put in a separate pen and locked up. The next morning Little & Broderick sold the cattle to one White, to whom was issued a weight ticket by the "weigh master," an employee of the stock yards company. A few hours afterward White sold the cattle to the defendants on account of the Cleveland Provision Company. Instead of reweighing them, White had another weight ticket made out, which is as follows:

"ST. LOUIS NATIONAL STOCK YARDS,
"11, 26, '90.

"From T. H. White to C. P. Co.
47 cattle. ..................................... ... ... 40,850 pounds
49 . " ..........................................42,760 "

"T. M. SMITH,
"Weigh Master."

On the same day the defendants, who are engaged in the cattle commission business, drew their draft on

the Cleveland Provision Company for the amount of the purchase and also their commissions and the cost of bedding for the cattle. The draft was discounted by a local bank, and with the proceeds the defendants paid for the cattle. The cattle remained in the charge of the stock yards company, and in the afternoon of that day, or that night, they were shipped to the Cleveland Provision Company, at Cleveland, Ohio.

In this action the plaintiff seeks to recover the value of the cattle, alleging in its petition that defendants had wrongfully converted them. The answer of the defendants challenges the title of the plaintiff to the cattle, and the alleged conversion is also denied.

The case was submitted to the court without a jury. On its own motion the court gave the following declarations of law, to which the defendant excepted, to wit:

"1. The validity of the chattel mortgage and bill of sale on which the plaintiff's title depends, it being shown by the evidence that the cattle in question were in the Indian Territory at the time said mortgage and bill of sale were executed by Beach and Feagins, the grantors, and that said Beach and Feagin resided in Cowley county, in the state of Kansas, and executed said instrument there, must be determined by the law of the place where said cattle were situated at the time of the transaction."

"2. When the mortgage and bill of sale read in evidence were executed in the state of Kansas, the common law of England was not in force in the Indian Territory, where said cattle were situated at the time of the execution of said instruments. There is no evidence before the court of any law, custom, or regulation established by the Indian tribe which had possession and control of the Kaw Reservation where said cattle were situated. It was admitted by counsel in the trial of the case that there was no law of said

territory or of any tribe of Indians relating to chattel mortgages in force at said time, and there was no law of the United States on the subject in force at said time in said territory. In the absence of any positive law of the *situs* of the property governing the matter, this court may determine the same according to the law of natural justice, and in determining what is natural justice in such a case the court may adopt the law of Missouri applicable in such cases, and determine the validity and effect of the instruments in question according to the law of Missouri, the same being involved in a suit pending in a court of this state."

"3. The chattel mortgage and bill of sale in question having been executed in Kansas, but the cattle therein described being at the time situated in the Indian Territory, the record of said instruments in Kansas where the grantors and grantees therein resided at the time, can not operate as a delivery of said cattle to the mortgagee and grantee; and if, under the law applicable to this case, as stated in these instructions, such delivery was necessary to make such mortgage and bill of sale effectual as against third persons, such record thereof in the state of Kansas did not have such effect."

"4. Under the foregoing instructions the validity or invalidity of said mortgage and bill of sale, as between the parties to this suit, should be determined according to the laws of Missouri as indicative of natural justice. At the time of the execution and delivery of said instruments, and at the present time, there was and is no express statutory provision in force in the state of Missouri to cover a case like the present, of mortgage or transfer of chattels by a person residing in a state different from the *situs* of the chattels, hence the matter must be determined by the rules of the com-

mon law of England, and by applicatory acts of parliament adopted prior to the fourth year of the reign of King James the First, as the same have been adopted in this state by section 6561, Revised Statutes of Missouri."

"5.   Under the law so applicable a delivery of the chattels mortgaged, or a recording of the chattel mortgage was not essential to the validity of the mortgage, either as between the parties thereto, or as between the mortgagee and creditors of or subsequent purchasers from the mortgagor, if the transaction was *bona fide*, and for an actual valuable consideration."

"6.   If, therefore, the court sitting as a jury finds and believes from the evidence that the transaction in question between the Arkansas City Bank and Warren & Irby, the mortgagees, and Beach & Feagins, the mortgagors, resulting in said mortgage and bill of sale, was honest and fair, and that said mortgage was executed and delivered by said Beach & Feagins to Warren and Irby for the honest purpose of securing to them the payment of the purchase price of the cattle; and if the court sitting as a jury further finds and believes from the evidence that the said bank thereupon advanced the sum of $26,040 (less an agreed discount) to said Warren & Irby upon the notes given by said Beach & Feagins to said Warren & Irby, and secured by said chattel mortgage and said notes and mortgages were thereupon assigned and transferred to said bank, and said bill of sale executed and delivered to it by said Beach & Feagins (the burden of proving the good faith of said transactions and of the actual advance of such money by said bank being on the plaintiff); and if the court sitting as a jury further believes from the evidence that said mortgage and bill of sale were made and received by the parties to said transactions without any intent on the part of either to hinder, delay or de-

fraud the creditors of said Beach & Feagins, and that said cattle were permitted to remain in the possession of said Beach & Feagins without any intent on the part of said bank to hinder, delay or defraud the creditors of said Beach & Feagins, or subsequent purchasers from them; and if the court, sitting as a jury, also finds and believes from the evidence that the cattle in controversy in this suit were part of the cattle included and described in said mortgage and bill of sale and that plaintiff is still the owner and holder of said notes, and that more than the value of the cattle in controversy here is still due and unpaid on said notes, and that said cattle herein sued for were in November, 1890, without the knowledge or consent of plaintiff, taken from the Indian Territory into Cowley county, Kansas, to be thence shipped to East St. Louis, and that the same were so shipped to East St. Louis and disposed of without the knowledge or consent of this plaintiff to the defendants, on or about November 26, 1890, at the National Stock Yards, East St. Louis, Illinois, and that the defendants purchased the same as agents of the Cleveland Provision Company, and that for such purchase defendants received a commission from said Cleveland Provision Company, then plaintiff is entitled to recover of the defendants the fair market value of said cattle at the National Stock Yards, East St. Louis, Illinois, on the day defendants purchased the same, not exceeding the sum of $2,500 with interest on such fair market value at six per cent per annum from the institution of this suit to date; and the fact that defendants may have purchased said cattle in good faith does not relieve them from liability in this action, if the facts are found by the court as above supposed."

Thereupon the court found for plaintiff in the sum of $2,498.66, for which a judgment was entered. The defendants have appealed and complain of the instruc-

tions, for the reason that there is no evidence of a conversion, and further that the plaintiff has shown no title to the cattle.

We will discuss the question of title first. In controversies like we have here, which is one between the mortgagor and an innocent purchaser, we are of the opinion that the law of the *situs* of the property will govern as determining the validity of the plaintiff's title under the mortgage. If the law of the *situs* can not be determined, then the law of the forum as indicative of natural justice must be applied. As it is conceded that there was no local law or custom, or federal statute in force in the Indian Territory governing chattel mortgages at the time the mortgage was given, the law of Missouri as indicated or determined by natural justice must govern. Hence, we have no concern about the laws of Kansas touching the registration of such an instrument. The mortgagors lived in Kansas and the mortgage was executed there, but the cattle were in the Indian Territory.

CHATTEL mortgage: innocent purchaser: title: law of situs: law of forum.

The foregoing is the theory of the court's instructions, and to that extent we find no fault with them. In determining the law of the forum as indicative of natural justice the court in its instructions adopted the rule of the common law as to chattel mortgages, and by it the right or title of the plaintiff to the cattle was determined. In this important respect we think that the court was in error. It assumed as a premise for this that our statute in reference to fraudulent conveyances had no application to a case where the property was situated in this state and the mortgagor lived in another. In our opinion this view is an erroneous one. The statute is that "no mortgage or deed of trust of personal property hereafter made, shall be valid against any other

LAW of forum: instruction.

than the parties thereto, unless possession of the mortgaged or trust property be delivered to, and retained by, the mortgagee or trustee, or *cestui que* trust, or unless the mortgage or deed of trust be acknowledged or proved in the county in which the mortgagor or grantor resides, in such manner as conveyances of lands are by law directed to be acknowledged or proved and recorded." R. S. 1889, sec. 5176.

This statute, in our opinion, refers to all chattel mortgages on property situated within this state. As to third persons such a conveyance is invalid, unless the mortgagee takes the actual possession of the property, or the instrument is recorded in the county where the mortgagor resides. If the latter resides out of the state, the last condition is impossible, for a record in this state is contemplated, but *it is possible* in such a case for the mortgagee to comply with the former requirement by taking possession of the property. This he must do if he expects a preference over third persons who may assert adverse claims to the property. There is a like statute in the state of New Hampshire. The supreme court of that state had before it a case where the mortgagor of chattels lived in another state and the property was situated in New Hampshire. The contest being between the mortgagee and the creditors of the mortgagor, it was held that to protect the property against the claims of creditors or purchasers, the mortgagee must take and retain the possession. *Smith v. Moore*, 11 N. H. 55.

The statute quoted and that governing other conditional sales of chattels indicate clearly that the general policy of the law of this state is to discourage, and as against creditors or purchasers from the grantor to invalidate all secret liens on, or conveyances of, personal property, and in our opinion this general policy ought to furnish the law in this case for the determi-

nation of the rights and liabilities of the parties to this action. The case having been submitted on an essentially different theory, the judgment will have to be reversed. However, as there is some evidence that the plaintiff was in the actual possession of the cattle at the time McDowell took them from the ranch, the cause will be remanded.

In view of a possible retrial we deem it proper to state our views on the other question. On that the defendants' argument is, that they at no time had the cattle in their possession, that they received no part of the proceeds of the sale, and that they acted merely in the capacity of brokers.

It was not necessary that the defendants should have had the complete manual possession of the cattle. If they intermeddled with them or exercised any dominion over them, either alone or in connection with others which was in denial or subversive of plaintiff's right, then there was a conversion. *Koch v. Branch*, 44 Mo. 542; *Lafayette Bank v. Metcalf*, 40 Mo. App. 494; *Bolling v. Kirby*, 24 Am. St. Rep. (Ala.) 789; *Williams v. Wall*, 60 Mo. 318; *Hoffman v. Carow*, 22 Wend. 285; Cooley on Torts, p. 524; *Hamlin v. Caruthers*, 19 Mo. App. 567. It is true that the National Stock Yards Company had the manual possession of the cattle while in the yards, but after they were paid for by the defendants they were certainly held for shipment by the company as the agent of the defendants. In this way clearly the defendants exercised dominion over the cattle which was inconsistent with or subversive of plaintiff's right to them, for they would not have been shipped had the defendants not paid for them.

Nor was it necessary to hold the defendants that they should have used or appropriated any of the pro-

CHATTEL mortgage: conversion.

Bank v. Cassidy.

ceeds of the sale to their own use. Factors CONVERSION: liability of fac- and agents may render themselves liable tors and agents. for conversion. If such persons sell or intermeddle with property, it is no answer that they acted for another or under authority from another who himself had no authority. It is their business to know the character of the persons with whom and for whom they deal, and to see to it that their principals are able to protect them if their action in reference to property bought or sold amounts to a conversion. *Koch v. Branch, supra; Lafayette Bank v. Metcalf, supra;* Cooley on Torts, *supra; Stephens v. Elwall,* 4 M. & S. 259; *Spraight v. Hawley,* 39 N. Y. 441; *Hoffman v. Carow, supra; Fowler v. Hollins,* L. R. 72 B. 616.

Lastly the contention is that the defendants were mere brokers. Brokers are interveners or go-betweens. They merely deal with the making of bar- CONVERSION: liability of gains between parties. They assume no brokers. authority or control of the goods, and they have nothing to say about the fulfillment or nonfulfillment of the contracts negotiated by them. Generally they are treated as having incurred no personal liability on account of their intervention. A sufficient answer to this contention is that the defendants admitted in their answer that they bought and paid for the cattle as *the agents* of the Cleveland Provision Company.

The judgment will be reversed and the cause remanded. It is so ordered. All concur.