**INTERSTATE FINANCE COMPANY OF KANSAS, Inc., Respondent,**

v.

**KANSAS CITY AUTOMOBILE AUCTION COMPANY, Appellant.**

No. 25180.

Kansas City Court of Appeals.

Missouri.

Oct. 6, 1969.

E. Frederick Beihl, C. Keith Larson, and J. Michael Dorsey, Kansas City, for appellant.

Herbert Jacob, Solbert M. Wasserstrom, Kansas City, for respondent.

HOWARD, Presiding Judge.

This is an appeal from a judgment in favor of a mortgagee against an automobile auction company for conversion of a mortgaged automobile. Trial to the court without a jury resulted in a judgment for respondent in the amount of $2,476.00. Jurisdiction is therefore in this court. We shall refer to the parties as they appeared below.

Trial to the court was on the basis of stipulated facts dictated into the record by the attorneys for the respective parties. These show that on October 1, 1962, one L. D. Frederick, a resident of Topeka, Kansas, purchased a new Ford automobile from a Ford dealer in the State of Kansas. This automobile was "financed" by plaintiff Interstate Finance Company. A few days later and before this automobile was titled in the State of Kansas, Frederick apparently changed his mind as to the automobile he desired. He took the automobile purchased on October 1 back to the same dealer and traded it for another new Ford automobile with a larger motor. He paid cash for the difference in price. Thereafter, he made application for title to this automobile to the State of Kansas. The bill of sale to this second automobile issued by the dealer did not show any lien. Likewise, the application for title and the title which was later issued by the State of Kansas did not show any lien. After application for title, Frederick went to the plaintiff Interstate Finance Company and executed a new chattel mortgage on this automobile. Typed on the face of the chattel mortgage was the following statement: "This note replaces chattel mortgage dated October 1, 1962". This is the chattel mortgage with which we are concerned in this case. It is dated October 1, 1962, but was admittedly executed some days thereafter. It was recorded on October 16, 1962. Sometime thereafter, Frederick sold the automobile in question to Stum Motors, a dealer in Manhattan, Kansas. Thereafter, on or about March 6, 1963, Stum Motors delivered the car to the defendant automobile auction company in Kansas City, Missouri. It was sold at auction by defendant to a dealer in South Dakota. The title to the automobile (showing no lien) was duly endorsed by Frederick to Stum and by Stum to the South Dakota dealer. Presumably, this dealer took the automobile to South Dakota.

On the basis of its duly recorded mortgage, plaintiff brought suit against defendant auction company for conversion of the automobile and secured judgment as hereinbefore stated in the amount of the unpaid balance due under its mortgage.

On this appeal, defendant contends that it is not liable to plaintiff (1) because defendant's mortgage lien was not noted on the certificate of title to the automobile in question as issued by the State of Kansas,

and (2) that it acted only as auctioneer and received no benefit from the sale of the automobile other than its $30.00 commission and is therefore not guilty of conversion.

■ It is admitted that plaintiff duly complied with the statutes of the State of Kansas concerning the filing and recording of chattel mortgages. As to the automobile title, we are concerned with Section 8–135 of the Kansas statutes as amended in 1961. This statute was amended in 1963 to materially change the provisions with which we are concerned but at the time here in question the revision of 1961 was in force and governs the decision of this case. The statute has since been further changed by the adoption of the Uniform Commercial Code in Kansas in 1965.

On this appeal, defendant contends that the recording of the mortgage lien by plaintiff in Kansas did not give constructive notice thereof to those who deal with mortgaged property without actual notice of the lien because the lien was not also noted on the certificate of title to the automobile. Defendant contends that without such notation on the title, plaintiff cannot recover. It contends that Section 8–135, supra, of the Kansas Statutes, requires that plaintiff's lien be noted on the title before defendant can be charged with notice thereof. Defendant relies primarily on the case of General Motors Acceptance Corporation v. Davis, 169 Kan. 220, 218 P.2d 181, 18 A.L.R.2d 808, as supporting this contention. In the Davis case, Hope Motor Company, a registered automobile dealer in the State of Kansas, sold a used car to one Gray who was a registered used car dealer in the State of Kansas. Gray executed to Hope a conditional sales contract for this automobile. Hope assigned the certificate of title to Gray, which certificate did not show the lien of the conditional sales contract. Hope then assigned the conditional sales contract to GMAC. Gray then sold the used car to defendant Davis who was also a used car dealer, who in turn sold it to an individual customer.

GMAC brought suit against Davis for conversion of the automobile in violation of its rights under the duly recorded conditional sales contract. The court pointed out that the conditional sales contract was not a negotiable instrument and that GMAC had no better rights than its assignor Hope Motor Company, which had violated the requirements of Section 8–135 when it failed to note the lien of the conditional sales contract on its assignment of title to the automobile as required by said Section 8–135. It was held that the purchaser could thus rely on the certificate of title showing no lien and took thereunder free and clear of any claims of Hope Motor Company and its assignees. This and other cases cited by defendant deal with automobile dealers and their obligations under this statute. Thus, in Home Finance Corporation v. Cox, 190 Kan. 553, 376 P.2d 884, the court points out that a vendor must both record its chattel mortgage under the General Recording Statutes and note the lien of such mortgage on its bill of sale and on the assignment of the certificate of title (in case of a used car) before the lien is enforceable against third parties who do not have actual notice thereof. Furthermore, where the mortgagor is a dealer and is known to be such by the mortgagee who consents to the mortgagor's placing the mortgaged property in his stock of goods for sale to the public, he is held to have consented to such sale in regular course of the business of the mortgagor and the purchaser takes free and clear of the lien of the mortgage. See Bordman Investment Co. v. Field, 182 Kan. 344, 320 P.2d 862; Universal Finance Corporation v. Schmid, 177 Kan. 414, 280 P.2d 577; and Rauh v. Dumler, 170 Kan. 698, 228 P. 2d 694. As will be noted, the circumstances in these cases are significantly different from the facts in the case at bar. Here, the mortgage was not given to the selling dealer but was given direct to the finance company. The mortgage was not executed until after the dealer delivered his bill of sale to Frederick and since no lien was in

existence at that time the dealer did not and was not required to note the lien on this bill of sale under Subsection (c)(3) of said Section 8–135 of the Kansas statutes. Likewise, the lien did not exist when Frederick made application for the title and consequently said application did not note the lien of this mortgage as required by Subsection (c)(1) of said Section 8–135. This statute as amended in 1961 made no provision for the notation of the lien of mortgages created after the title application. (The amendment of 1963 made such provision.)

Consequently, the holdings in the Kansas cases heretofore cited do not rule the case at bar. They are all clearly distinguishable on the facts. Defendant argues that the relationship between plaintiff and the selling dealer was such that the doctrine of the Davis case should apply. However, the plaintiff expressly refused to stipulate to any such relationship and consequently the record in this case does not support defendant's argument. Peculiarly enough, the case most nearly parallel to the facts here presented is Fidelity State Bank v. La Tempa, 350 S.W.2d 276, decided by this court in 1961. In that case La Tempa purchased the car in question from his brother and mortgaged the car to the plaintiff bank in Kansas which duly recorded its mortgage. La Tempa secured a Kansas title on which the lien of the mortgage was not shown and then brought the car to Missouri and sold it to a dealer and endorsed the Kansas title without showing the lien of the mortgage. The Missouri dealer sold the car to its customer DeWitt and certified a title clear of all liens except the mortgage by which DeWitt financed his purchase. The bank sued the dealer and DeWitt, among others, for conversion. The court held that the Kansas statute did not require the mortgagee to have its lien noted on the Kansas title under such circumstances since the statute placed such obligation only on an owner or a dealer, not on a mortgagee who was neither an owner nor a dealer. The bank had judgment against the Missouri dealer and against its customer DeWitt which was affirmed by this court. In reaching this conclusion, the court discussed the Kansas statutes (these statutory provisions are the same as those applicable in the case at bar):

"Defendants, however, refer to the Kansas legislation pertaining to the registration of motor vehicles, transfers of ownership thereof, and for certificates of title thereto, as imposing upon a mortgagee a duty to have his lien endorsed or shown on the certificate of title. Yet, a careful search fails to reveal any such requirement in the Act, nor can there be found any requirement of a mortgagee to take and hold the certificate of title until the lien is satisfied. General Statutes of Kansas, 1957 Supp., 8–135. The statute is too long to quote in its entirety but, in summary, Subsection(c)(1) relates to certificates of title, and provides that an *owner* of a motor vehicle shall make application for a certificate of title which shall show, among other things, all liens and encumbrances thereon. Subsection (c)(2) provides for the assignment form on the reverse side of the certificate of title to be executed by the *owner*, and further provides that the assignment shall contain a statement of all liens and encumbrances at the time of the assignment. Subsection (c)(3) because of its importance in analyzing the decisions cited by defendants, we set out in full:

'*Dealers* shall execute, upon delivery to the purchaser of every vehicle, a bill of sale stating the lien or encumbrances thereon, in accordance with form prescribed by the commission for all vehicles sold by them. * * *' (Emphasis supplied.)

"A careful reading of the statute will disclose that the duty is upon an *owner* of a motor vehicle, and not upon a mortgagee, to make application for title and

to show thereon any liens, and it is also the *owner's* duty to execute an assignment of the title and to show thereon any liens at that time. No obligation is imposed by the statute, or the decisions, upon a mortgagee as such to see that his lien is shown in the assignment. Of course, if the mortgagee is the seller (owner) taking a mortgage back from the purchaser of the motor vehicle, he will, as the owner and assignor, be required to show his lien on the form of assignment. Subsection (c)(3) quoted above imposes an additional duty upon the *dealer* to execute a bill of sale upon the sale of any motor vehicle, new or used, and to state therein the lien or encumbrance."

The court then discussed the same cases relied on by defendant in the case at bar and concluded:

"None of the facts giving rise to an estoppel in the cases cited by defendants exist in the case at bar. In the instant case, plaintiff was lending money, as a banking institution, to the defendant La Tempa to purchase the automobile in question from his brother. Plaintiff was not the owner or the seller of the motor vehicle in question, and La Tempa was not a dealer in motor vehicles. He was buying the automobile for his personal use, and not to resell as a part of his regular course of business. Under these facts, no duty by the statutes of Kansas was imposed upon plaintiff herein, as was imposed upon the mortgagee in the cases cited by the defendants which called into application the principle of estoppel."

We believe that this language is peculiarly applicable to the case at bar. We therefore hold that the lien of the plaintiff was valid and subsisting and entitles plaintiff to recover against this defendant.

■■ Defendant also contends that because he acted only as auctioneer he is not liable to plaintiff. He bases this argument solely upon the case of Commercial Credit Corporation v. Joplin Automobile Auction Company, Mo.App., 430 S.W.2d 440. That case held the auction company liable to the Oklahoma mortgagee. The facts there showed that the mortgagor brought the mortgaged automobiles to the auction company and the proceeds of the sale were retained by the auction company in partial satisfaction of preexisting indebtedness of the mortgagor to the auction company. Defendant points out that in the case at bar it did not deal with the mortgagor Frederick but dealt with Stum Motors who was also an innocent purchaser and that it did not retain any of the proceeds of sale except its $30.00 commission. These contentions are factually correct but are without significance in determining whether or not defendant is liable to plaintiff. Missouri law is well-settled that auctioneers, warehousemen, commission merchants, etc., who deal with property as a middleman for and on behalf of and as agent for others are liable in conversion when they effectuate the sale of property for principals who cannot legally authorize the sale. See in this connection, Mohr v. Langan, 162 Mo. 474, 63 S.W. 409; Everett v. Barse Live Stock Commission Co., 115 Mo.App. 482, 88 S.W. 165; and Wisdom v. Keithley, 237 Mo.App. 76, 167 S.W.2d 450. These cases demonstrate that the agent who sells the property in violation of the rights of a mortgagee whose mortgage is duly recorded is guilty of conversion and this liability exists whether the agent deals directly with the mortgagor or with an innocent third or subsequent party. Arkansas City Bank v. Cassidy, 71 Mo.App. 186, 198.

We therefore conclude that the trial court was correct in holding that defendant was guilty of conversion and liable to the mortgagee. The judgment below is therefore affirmed.

All concur.