## MARGARET C. DOUGHERTY v. EDWARD J. STRONG, Appellant.

### Division Two, February 26, 1926.

1. **WITNESS: Deceased Party: Interest in Event: Conduit of Title.** In a suit to have defendant declared a trustee for plaintiff of land fraudulently conveyed by her agent through a third party as an accommodation conduit, such third party, who paid nothing for the conveyance to him and was paid nothing for his deed to defendant, is not an incompetent witness to testify to such facts and to whatever he knew about the transaction, because (a) he is not a party to the cause of action; (b) if he has any interest in the event of the suit his testimony for plaintiff is against such interest, and (c) the suit is not upon a contract or any issue arising out of or connected with a contract.

2. **FRAUDULENT CONVEYANCE: Deed by Agent to Self: Trustee for Rightful Owner.** Plaintiff resided in Washington, and placed in the hands of her agent, who had collected her rents and managed numerous properties in Kansas City, a note for six hundred dollars secured by deed of trust, with direction to the agent to collect it. The agent bought the property, at a foreclosure sale duly advertised, and had the trustee convey it to him for a named purchase price of one hundred dollars, which was never paid; he then conveyed to Harris, and Harris and wife conveyed to defendant and his wife as tenants by the entirety. Defendant's wife was an assistant in the agent's office and actively took part in the transaction and wrote letters to plaintiff falsely stating that the property had sold for seven hundred dollars and making numerous other statements calculated to mislead and conceal the true facts. The defendant and his wife, at the time Harris conveyed to them, executed a deed of trust on the property for five hundred dollars, which was not

paid or placed to plaintiff's credit, and defendant both knew and participated in the fraudulent transactions. The agent's book showed a credit to plaintiff of the alleged seven hundred dollars, but the entry was a part of an account which showed her credited with eleven hundred dollars more than was paid to her. The agent and defendant's wife being dead, this suit is brought against defendant alone, to divest the title out of him, and vest it in plaintiff. *Held*, that, all these facts being established by the evidence, the trial court rightly entered a decree awarding the possession of the property to plaintiff.

3. **FRAUD: Manifold.** Fraud uses many instrumentalities in the accomplishment of its purpose.

4. ————: **Other Transactions: Intent.** Proof of other similar fraudulent acts is admissible to establish the intent or motive which moved a party in the performance of the act pleaded.

5. ————: **Husband and Wife: Presumption of Confiding Relations.** Absent evidence to the contrary, the kindly presumption prevails that husband and wife sustain amicable marital relations with each other, and that the wife confided in the husband the facts pertaining to a conveyance of valuable property to them as tenants by the entirety; and especially should this presumption be kept in view, when the evidence shows that they carried a joint account in the bank and signed commercial paper together, and he reaped the benefit of her fraudulent acts.

Appeal and Error, 4 C. J., Section 2666, p. 737, n. 58.  Fraudulent Conveyances, 27 C. J., Section 133, p. 484, n. 35; Section 739, p. 807, n. 27; Section 770, p. 821, n. 39; Section 781, p. 835, n. 63, 64.  Trusts, 39 Cyc., p. 193, n. 8.  Witnesses, 40 Cyc., p. 2298, n. 83; p. 2334, n. 86, 87.

Appeal from Jackson Circuit Court.—*Hon. Allen C. Southern*, Judge.

A<small>FFIRMED</small>.

*Lathrop, Morrow, Fox & Moore, Cyrus Crane* and *Winston H. Woodson* for appellant.

The plaintiff failed to prove that the transaction was fraudulent, therefore, the decree and judgment of the court should have been for the defendant. (1) The court erred in allowing Charles L. Harris to testify. Sec. 5410, R. S. 1919; Smith v. Smith, 201 Mo. 533; Herndon

v. Yates, 194 S. W. 46; Danciger v. Stone, 278 Mo. 19; Edwards v. Scharff, 279 Mo. 78; Harding v. Trust Co., 276 Mo. 136; Chapman v. Dougherty, 87 Mo. 626; Lieber v. Lieber, 239 Mo. 1; Leavel v. Ry. Co., 266 Mo. 151; Diggs v. Henson, 181 Mo. App. 34.   (2)   Presumption of innocence.   Chandler v. Hedrick, 187 Mo. App. 664; Hendricks v. Calloway, 211 Mo. 560; State ex rel. v. Taylor, 298 Mo. 474; Nelson v. Jones, 245 Mo. 579; Rice v. Ins. Co., 176 S. W. 1113; Chapman v. McIllwrath, 77 Mo. 38; Skinner v. Davis, 271 S. W. 992.

*P. E. Reeder, Miller, Winger & Reeder* and *S. J. Mc-Culloch* for respondent.

(1)   Charles L. Harris was a competent witness. Bates v. Frecht, 89 Mo. 121; Hamra v. Orten, 208 Mo. App. 41; Allen Estate Assn. v. Fred Boeke & Son, 254 S. W. 865. (2)   Plaintiff's case is abundantly established by the other evidence in the record, without regard to the testimony of Harris.   King v. Moon, 42 Mo. 551; Mankeimer v. Harrington, 20 Mo. App. 297; Massey v. Young, 73 Mo. 260.

WALKER, P. J.—This is a suit in equity brought in the Circuit Court of Jackson County at Kansas City, to divest the defendant of the title to a parcel of land in Kansas City, described as "Lot 61, Wenzel Garden, Addition to said city," or by its street number, "2727 Kensington Avenue." Upon a hearing the court entered a decree awarding the possession of the property to the plaintiff, from which judgment the defendant appeals.

*The Pleadings*:—The averments of the petition are in effect as follows: That plaintiff was the owner of a promissory note for $600, secured by a deed of trust on the property in question; that the maker of the note and the deed of trust defaulted in the payment of the note, and the plaintiff delivered the note to her agent, one R. W. Van Trump, for collection; that Bertha O. Strong, the

wife of the defendant, was in the employ of Van Trump and assisted him in the handling of the plaintiff's property; that at the time of the filing of this suit Van Trump and Bertha O. Strong were dead, the former having died in June and the latter in May, 1919; that Van Trump, while transacting plaintiff's business, directed the trustee in the deed of trust to advertise the property for sale and at the sale bought it for the sum of one hundred dollars and had the trustee make and deliver to him a deed to the property, which he had recorded February 26, 1918; that Van Trump paid nothing to the trustee at the time he bid in the property or at any other time; that the expenses of this sale he paid out of money in his hands belonging to the plaintiff; that thereafter Bertha O. Strong informed the plaintiff that the property had been sold for seven hundred dollars, when in truth and in fact no sale of the property had in good faith been made, but the said Van Trump held the title to the property in trust for the plaintiff; and in order to deceive her conveyed it by warranty deed to Charles L. and Cora May Harris, husband and wife, who paid no consideration therefor and they in turn conveyed it to Bertha O. Strong and her husband, Edward J. Strong, the defendant, by warranty deed, July 27, 1918, and that no consideration for this transfer passed between the parties thereto; that Bertha O. Strong, being dead, the title to said property is now vested in the defendant, Edward J. Strong, subject to a deed of trust to secure a note of $500, borrowed upon said property by Edward J. Strong and his wife, and that the defendant Edward J. Strong took title to the property with full knowledge of this entire transaction, including the fact that Van Trump held title to said property in trust for the plaintiff. The plaintiff therefore prays that the defendant Edward J. Strong be adjudged and decreed to hold title to the property in trust for the plaintiff, and that an order may be made directing the defendant to execute a deed conveying the property to the plaintiff and to account to her for the sum of five hundred dollars

borrowed, by defendant and his wife, for which said property was pledged as security, and for the rents and profits accrued since the title to same was conveyed to the defendant. The answer and the reply were general denials.

*The Facts:*—Plaintiff testified that Van Trump, from the summer of 1917 to the date of his death in June, 1918, was employed by her in handling her real property in Kansas City; that Bertha O. Strong during all of this time was his secretary and that her salary was paid by the plaintiff; that plaintiff delivered the six-hundred-dollar note secured by a deed of trust to Van Trump for collection.

In connection with plaintiff's testimony there was introduced in evidence as exhibits the note for six hundred dollars; the deed of trust on the land in controversy to secure the payment of the note; the notice of the trustee's sale; proof of publication, and the trustee's deed to Van Trump and a letter from Bertha O. Strong to the plaintiff reporting the sale of the property at the trustee's sale.

Charles L. Harris, witness for the plaintiff, knew Van Trump and Bertha O. Strong, who at the time were managing the plaintiff's property; that Van Trump told him he had a piece of property at 2727 Kensington Avenue he wanted to sell to Mrs. Strong, but didn't like to make a direct transfer to her, and asked Harris if he would not permit the use of his name as grantee in a deed from Van Trump to him, whereupon Harris was to transfer the property to Mrs. Strong. Harris finally, for accomodation, acceded to the request, and Van Trump and his wife made a warranty deed of the property to Harris and wife for "one dollar and other valuable considerations." A few days later Harris and wife in turn, as requested by Van Trump, conveyed the property to Bertha O. and Edward J. Strong, her husband for "one dollar and other valuable consideration." Harris paid nothing for the property transferred to him by Van Trump and wife, nor did he

receive anything when he and his wife conveyed it to Bertha O. Strong, and her husband, the defendant. That the property described in these deeds was at 2727 Kensington Avenue, and during this entire transaction Van Trump was handling the plaintiff's property and Bertha O. Strong was his assistant.

M. H. Winger, witness for the plaintiff, testified that he was familiar with the signatures of Van Trump and Bertha O. Strong and knew Van Trump was in charge and control of plaintiff's securities and real property in Kansas City from July or August, 1917, and down to the time of his death; that Bertha O. Strong assisted him in the management of this property and that her salary for such services was paid by the plaintiff; that the note of six hundred dollars involved in this controversy was delivered to Van Trump as a part of plaintiff's property to be managed by Van Trump, and that the deed of trust to secure the payment of said note was foreclosed on the property at a trustee's sale and was bought by Van Trump for $100. Several other witnesses testified to substantially the same facts.

A number of exhibits consisting of letters, book entries, reports and accounts were introduced in evidence, the purport of which was to show the manner in which the plaintiff's affairs were conducted by Van Trump and Bertha O. Strong. By way of illustration, on February 15, 1918, Bertha O. Strong wrote a letter to the plaintiff, residing in Washington, D. C., in which the writer reports the sale of the property in controversy under the deed of trust, and states that "the title was taken in the name of Van Trump so that the owner of the property could not redeem it under the statute." Neither the name of the purchaser, nor the price at which the property was sold, was stated. On the 14th day of August, 1918, Bertha O. Strong wrote another letter to the plaintiff in which she stated that the property had been sold for seven hundred dollars. The expenses of this sale and other items purporting to have been incurred in the managing of the

property in question was charged to the account of the plaintiff and deducted from the amount of her credits as shown by the books kept by Bertha O. Strong, amounting to three hundred dollars and seventy-three cents. At the time the letter to plaintiff of August 14, 1918, was written, Van Trump, without consideration, had transferred the property in question to Harris and wife and they had conveyed the same, likewise without consideration, to Bertha O. Strong and her husband, the defendant. Further than this, it appears that Bertha O. Strong charged the plaintiff a commission of one hundred and twenty-five dollars for making this purported sale of plaintiff's property to Van Trump, which ultimately resulted, as stated, in the transfer of the paper title in the same to Bertha O. Strong and defendant, through Harris and wife as convenient conduits. While thus invested with the title Bertha O. Strong wrote the letter of August 14th to the plaintiff in this language:

"The house at 2727 Kensington is sold, got the cash for it $700. And we were in luck, there was a sewer bill of $80, and a paving bill of $105 that had to be paid or they would take final judgment on the property, we settled the bill of $80 and the man that bought the place took care of the bill for $105, it only rented for $10 per month so I think we did pretty well."

In this connection there appears in the record a copy of a note, signed by Bertha O. Strong and made payable to Van Trump for $700 and dated July 30, 1918, after the deed made by Harris and wife to Bertha O. Strong, which is as follows:

$700.                                    7-30 1918
Thirty Days after date I promise to pay to the order of R. W. Van Trump Seven hundred 00/100 Dollars for house 2727 Kensington, Value received.
    (Three cancelled revenue stamps)
    7/30/1918.
                    (Signed) BERTHA O. STRONG.
On face of note:
Paid 9/20/1918,
    R. W. Van Trump.

It will be seen that this note is marked as having been paid 9/20/1918, the indorsement to that effect being signed by Van Trump. The bank account of plaintiff showing

313 Mo. Sup.—3.

the receipts and expenditures concerning plaintiff's property, kept by Van Trump and Bertha O. Strong pursuant to an arrangement between plaintiff and Van Trump, shows no deposit of seven hundred dollars or any other amount to plaintiff's credit as the purchase price of the property. Other than the memorandum on the note there is nothing to show, nor was it attempted to be shown, that Van Trump ever received from Bertha O. Strong or the defendant any amount in payment of the purchase price of the property. It further appears that Bertha O. Strong and her husband, the defendant, secured a loan of five hundred dollars from one William W. Jacobs, July 30, 1918, and gave him a deed of trust on plaintiff's property to secure its payment. There is no evidence that this sum, for the payment of which plaintiff's property was pledged, or any part of same, was ever placed to the latter's credit or in any manner paid to her. It is of more than passing notice that the deed of trust made to one Hoffman, trustee for Jacobs, to secure the payment of the $500-note made by Bertha O. Strong and her husband, the defendant, and the deeds from Van Trump and wife to Harris and wife, and the deed from the latter to Bertha O. Strong and her husband, although purporting to have been executed at different times, were all filed for record on the same day, August 1, 1918, or, it may be said, simultaneously, as the minute dates of their filing are, respectively, 10:46 A. M., 10:47 A. M. and 10:47 A. M. These *indicia* are, to a mind given to an inquiry as to the reason of things, presuasive evidence that these transfers were part and parcel of the same transaction.

Only the defendant was offered as a witness in the defense of this case. His contention savors of a plea of exculpation in that he says he received none of the money arising from the manipulations of the plaintiffs' property, especially the five hundred dollars obtained as a loan from Jacobs. Despite this plea the record shows that the defendant and his wife executed a note as evidence of this loan and a deed of trust on plaintiff's property to secure its payment.

There was also testimony that the defendant and his wife had a joint checking account at the Missouri Savings Bank; and that a check from the plaintiff to Van Trump for $232, evidently as a charge for expenses claimed to have been incurred by Van Trump for the plaintiff, was shown to have been indorsed by him and Bertha O. Strong to the credit of the defendant, Edward J. Strong, in the bank in which he and his wife kept their joint account.

It further appears that the use of the defendant's name by his wife in business transactions and the affixing of his signature to checks, etc., was with his knowledge and approval. He does not testify to the contrary. Throughout this trial the defendant contended himself with the interposition of objections to alleged errors in procedure. No affirmative defense to the merits was attempted to be made.

I.   Appellant's chief contention is that the court erred in permitting Charles L. Harris to testify. The reason stated in support of this contention is that, Van Trump and Bertha O. Strong being dead, the admission of Harris's testimony was in violation of Section 5410, Revised Statutes 1919, the portions of same relevant to the matter at issue being as follows:

**Competent Witness.**

"No person shall be disqualified as a witness in any civil suit or proceeding at law or in equity, by reason of his interest in the event of same as a party or otherwise, but such interest may be shown for the purpose of affecting his credibility: *Provided,* that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead  .  .  .   the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him, and no party to such suit or proceeding whose right of action or defense is derived to him from one who is, or if living would be, subject to the foregoing disqualifications, shall be admitted to testify in his own favor."

Harris was not a party to this cause of action. The matter at issue and on trial was the fraudulent manipulation by Van Trump and Bertha O. Strong of the plaintiff's business whereby the record title of her property was attempted to be vested in Bertha O. Strong and her husband, the defendant. Harris not being a party to the suit, and having no interest in or connection with the same other than to permit Van Trump to use him as a convenient and gratuitous conduit for the transfer of the title to the plaintiff's property from Van Trump to the Strongs, cannot be held to have been testifying in his own favor or in favor of any party to the action claiming under him. If, under the most strained construction, he had any interest near or remote in the matter in controversy his testimony was against such interest and hence not within the prohibitory proviso of the statute. If, on the other hand, he had no interest in the outcome of the suit he was a competent witness, both at common law and under the statute. Probably no section of our laws has been more frequently discussed, not only as a whole, but in regard to its different provisions, than Section 5410. We have reviewed with care the various cases cited by the appellant in support of his contention, as well as later ones. In each of these where a party was held incompetent as a witness on account of the other party being dead, the party disqualified was shown to have been within the terms of the proviso of the statute, viz.: that the testimony proposed to be offered was in the witness's favor or in favor of a party to the action claiming under him. Moreover, this was not a suit upon a contract or any issue arising out of or connected with a contract. It was a suit in which the plaintiff sought to divest the defendant of a paper title to her property obtained by him through the fraudulent practices and false transfers of Van Trump and Bertha O. Strong of which the record bears testimony that the defendant was familiar. Under this state of the facts and the nature of Harris' testimony, Justice would not only move with leaden heel but with limping tread if it be

held that Harris was not a competent witness. This contention is therefore overruled.

II. Proof is not lacking of the baldly fraudulent practices of Van Trump and Bertha O. Strong in the conduct of plaintiff's business which culminated in their attempt to deprive her of her property. Her residue elsewhere and the distance that divided her from them added to their opportunity in the perpetration of this fraud. Her confidence in them, as disclosed by the record, evidently encouraged them in their course and begot the belief that their fraudulent conduct would escape her attention. In thus betraying her trust they appear to have been unmindful of the fact that to acquire a claim of ownership to real property the publicity of a record is a consequent necessity. Dickens somewhere says that the criminally inclined, however alert in their efforts to hide the evidences of their wrongdoing, usually leave an avenue open which will lead to their ruin.

Fraud: Badges and Proof.

When Van Trump and Bertha O. Strong concluded therefore to perpetrate this pitiable fraud, for it amounted at best to no more than six or seven hundred dollars, they proceeded, as they evidently believed, warily. Van Trump, as instructed by the plaintiff, directed the trustee to sell the property. At the sale he bid it in, had the deed made to himself and his ever ready assistant, Bertha O. Strong, promptly notified the plaintiff that the property had been sold and that the title had been taken in Van Trump's name, "so that the owner of the property could not redeem it under the statute." The meaning and purpose of this alleged reason for Van Trump taking title to this property is past finding out. If bought by him in good faith he could, by reason of the fiduciary relation he sustained to plaintiff, only hold it in trust; if bought for another, in good faith, the right of redemption did not exist and there was no basis in law or in fact for the statement. Its purpose, therefore, could only have been

to mislead the plaintiff, which is one of the multiform badges of fraud.

Plaintiff's additional information concerning this transaction is found in Bertha O. Strong's letter to the plaintiff of August 14, 1918, where after stating that the property had been sold for seven hundred dollars, to whom she does not state, she adds that although "we," evidently referring to Van Trump and herself, "had to pay a sewer bill of eighty dollars we were nevertheless in luck because the purchaser agreed to pay a paving bill of one hundred and five dollars." The statements contained in this letter were without any foundation in fact, and they only existed in the fertile fancy of Bertha O. Strong; their purpose, when tested by all of the facts now disclosed in regard to this transaction, was to deceive and mislead the plaintiff as to their tortious methods in the management of her property. To one familiar with ordinary business affairs it would seem that such crookedness would be speedily detected. No so, however, with the plaintiff one thousand miles or more away and reposing such confidence in her agents that they not only collected all of her rents and deposited them in a bank of their own selection, but from time to time made, or purported to make, all necessary expenditures incident to the care and keeping of her property of which she had numerous other holdings in Kansas City, than that concerning which this fraud was perpetrated. How often they made reports to her of the conduct of her business, if at all, the record does not disclose. Subjected to judicial scrutiny this much appears; that Van Trump's books, kept in his office by Bertha O. Strong, in regard to plaintiff's business show that they had received during the month of August, 1918, for the plaintiff, a total sum of $2,210.94. The Pioneer Trust Company was the depository for all funds collected by them for the plaintiff. All that was deposited therein by these parties for the plaintiff during that month was eleven hundred dollars, or less than half of what their own books showed they had received during that time. From

the total amount shown by their books, however, as having been thus received should be deducted seven hundred dollars, under this entry: "8-8 Chas. Harris, 2727 Kens." This was evidently intended to indicate that in the transfer of the property to Harris and wife at the request of Van Trump, they had received in payment therefor seven hundred dollars. Viewed from every possible angle the falsity of this entry becomes apparent. Harris so testified and no effort was made to refute his statement. Its truth was attested by all of the other attendant circumstances; in addition, the Trust Company's records disclosed no credit of this character at any time. It was therefore a "faked" entry, which appeared only in the books of these parties and in no manner was it shown that the amount stated had been accounted for to the plaintiff. While the elimination of this entry reduces the discrepancy between the amount received for the plaintiff during the month of August and that deposited by them to her credit, it still leaves a balance of over four hundred dollars received by them for her during that time which is in no manner accounted for or attempted to be explained. Unexplained, when considered in connection with the other practices of these parties in the management of plaintiff's property, it may be fairly classified as another badge of fraud.

It will serve no substantial purpose to contend that the acts stated do not tend to prove the matter at issue. Fraud uses many instrumentalities in the accomplishment of its purpose. It has many times been judicially declared and it is adopted as a rule in Treatises on Evidence that proof of other similar fraudulent acts is admissible to establish the intent or motive which moved a party in the performance of the act pleaded.

**Other Similar Acts.**

. The St. Louis Court of Appeals, in discussing this question, has said that: "Other transactions of the party accused of the fraudulent intent, not only contemporaneous with the transaction in controversy, but previous and subsequent to it, which have a natural tendency to explain the motives with which it may have been ef-

fected and which are not too remote and conjectural, should be gone into.'' [Manheimer v. Harrington, 20 Mo. App. 297.]

And the Kansas City Court of Appeals has likewise said: ''As bearing upon the question of intent, the rule is well established that evidence is admissible of other similar acts of the accused in his dealings with others at, or about, the same time and in connection with transactions of the same general character.'' [Ball v. Grismore, 210 Mo. App. 16, 29.]

III. More to the point, as presenting facts which were not attempted to be explained, much less refuted, in regard to the conduct of these parties in the management of the plaintiff's affairs, is the attempted conversion of the property in question by the transfers made of same.

Participation. It is to these, not only as exemplifying the gross breaches of trust of Van Trump and Bertha O. Strong, but as demonstrating the knowledge of the defendant of the fraud which culminated in the paper title being lodged in him, that we would direct our attention. Every act of Van Trump and Bertha O. Strong from the time of the purchase of plaintiff's property at the trustee's sale is maculated with fraud. They purposely misled her as to the facts of the sale; they not only did not account to her for even the amount of Van Trump's bid, but charged her with over $300 as expenses of the sale and in addition with $125 as their commission for making the sale. Their purpose to convert the property, if not indicated by their former conduct, is attested by Van Trump seeking by its transfer from him to Harris to lodge the title in his co-conspirator, Bertha O. Strong, and her husband. We use the word ''lodge'' in this connection as better fitted to characterize the transaction than ''vest,'' because the title never vested in her and her husband, the defendant, to whom the deed was made. Throughout this conspiracy the plaintiff, except for the two letters written to her by Bertha O. Strong, was completely oblivious of the entire transaction.

IV.   The defendant and his wife, Bertha O. Strong, so far as the record discloses, sustained amicable marital relations towards each other.   Absent evidence to the contrary, the kindly presumption obtains that they were intimate and so being that they confided in each other as is usual between persons sustaining the sacred relation of husband and wife.   In reaching this conclusion we are not limited to presumption based upon average human experience, but the record affords affirmative instances in support of the same. The defendant and his wife kept a joint checking account at the bank.   A check for $232, sent by the plaintiff to Van Trump, was indorsed by him and Bertha O. Strong to the defendant and deposited by the latter to his and his wife's credit.   When Van Trump determined to transfer the property to her with Harris and wife as conduits, the conveyance was not made to Bertha O. Strong alone, but to her and her husband as tenants by the entirety.   In addition, it was her custom to use his name with her own in business transactions as in affixing his name to checks, etc.   It is not questioned that this was done with his approval.   Further than this, and in a manner confirmatory of the nature of their relations, they borrowed five hundred dollars from one Jacobs, gave a joint note as evidence of same and executed a deed of trust on the plaintiff's property to secure its payment.   In the face of these facts it seems absurd to the adult mind, whether professional or lay, to contend that the defendant was not familiar with his wife's transactions.   Especially is this true in regard to her business relations with Van Trump and the plaintiff.   Defendant, if possessed with average intelligence, knew that his wife was being compensated, in part at least, for her services by the plaintiff and that the relation was one of trust.   He knew that she paid nothing for the deed from Harris to the plaintiff's property.   The nature of the deed to her and the defendant shows almost indubitably that she and he discussed this matter before the conveyance was made.   Unless he was familiar with the entire trans-

*Presumption.*

action and had consented to become a party to this attempted conversion of the plaintiff's property, it is not likely that he would have joined in the note and deed of trust to secure the five-hundred-dollar loan. Confronted with these facts it is not consonant with reason, based upon a knowledge of human affairs, that the defendant was not only cognizant of this fraud, but participated in it.

In view of all of which the judgment of the trial court is affirmed. All concur.