EDWARD METZGER, APPELLANT, v. COLUMBIA TERMINALS COMPANY, A CORPORATION, RESPONDENT.—50 S. W. (2d) 680.

St. Louis Court of Appeals. Opinion filed June 7, 1932.

*H. F. Russell* for appellant.

*Thompson, Mitchell, Thompson & Young* and *R. Forder Buckley* for respondent.

NIPPER, J.—This is an action in replevin to recover possession of an Essex automobile. The statement alleges the value of the automobile to be $200, and it is sought to recover the same from the possession of the defendant; the defendant seeks to retain possession on account of certain freight and storage charges.

There was a judgment in favor of defendant and against plaintiff for the sum of $96.72, the amount of the freight and storage charges.

The case was submitted upon the following agreed statement of facts:

"On July 17, 1926, plaintiff sold an Essex automobile, motor No. 155905, to Edward T. Rayment for the sum of three hundred fifty ($350) dollars; that a note in the amount of two hundred fifty ($250) dollars secured by a chattel mortgage was executed by the said Rayment as part purchase price, said note being payable in weekly installments of six ($6) dollars until the note was paid in full; that the chattel mortgage was filed for record in the Recorder's office of St. Louis, Missouri, at 1:45 P. M., July 26, 1926; that the automobile in question was delivered to Mr. Rayment, and that Mr. Rayment paid nothing on the car after delivery.

"It is further agreed that some time thereafter the said Mr. Rayment drove the car out of the State of Missouri without the actual knowledge or consent of the plaintiff herein, and that on or about October 22, 1926, the said Edward T. Rayment delivered in Philadelphia to the Baltimore and Ohio Railroad Company the said Essex coach consigned to the plaintiff herein at its address in St. Louis, Missouri; that plaintiff was not a party to said contract with said railroad company, and had no knowledge or information of its terms, nor has it since agreed to be bound by the terms of said contract, and that at the time the said car was delivered to the Baltimore and Ohio Railroad Company for delivery to the plaintiff herein in

St. Louis, the said Edward T. Rayment received a bill of lading for the same, which said bill of lading is attached hereto and made a part hereof, which he thereafter, by a letter dated October 27, 1926, from Philadelphia, forwarded to the plaintiff herein, which said letter is attached hereto and made a part hereof; that the Essex coach in the due course of its transportation was delivered by the Baltimore and Ohio Railroad Company to its East St. Louis terminus and there delivered to the Columbia Terminals Company as a connecting carrier for carriage to St. Louis, the final destination; that the Columbia Terminal Company, in accordance with the custom of carriers, paid the previous carrier, the Baltimore and Ohio Railroad Company, its reasonable and regular charge of ninety-six ($96) dollars, whereupon the said freight bill in the amount of ninety-six ($96) dollars was marked 'paid' by the agent for the Baltimore and Ohio Railroad Company, the said freight bill being attached hereto and made a part hereof; that the said Essex coach was kept by the defendant Columbia Terminals Company until the charge of seventy-two cents for storage, the same being the usual, just and reasonable charge for such storage, had accrued; that the note, chattel mortgage and bill of sale executed by the said Mr. Rayment are attached hereto and made a part hereof; that in said letter above referred to the said Rayment enclosed the said bill of lading, which the plaintiff presented to the defendant, requesting the delivery of the automobile to him, and that defendant refused to deliver the said automobile unless the plaintiff paid the sum of ninety-six dollars and seventy-two cents ($96.72) as freight and storage charges; that the plaintiff refused to pay said freight and storage charges and instituted the present suit in replevin for possession in the Justice of the Peace Court of Elmer L. Moone; from a judgment in said court awarding the defendant Columbia Terminals Company a judgment for ninety-six dollars and seventy-two cents ($96.72) as its special interest in and to the said Essex coach, the plaintiff has appealed.

"It is further agreed that the said Essex coach has been sold by the plaintiff, under the terms of the chattel mortgage, for less than the mortgage debt.

"It is further agreed that under the law and decisions of the State of Pennsylvania a chattel mortgage recorded in a State other than Pennsylvania does not import notice to anyone in Pennsylvania whether the mortgaged article has been removed to the State of Pennsylvania with or without the consent of the mortgagee of the same, and that the rights of any party accruing in the State of Pennsylvania constitute a lien superior to that of a mortgagee under chattel mortgage recorded in the other State. Plaintiff does not

concede that the laws of Pennsylvania have any application to the facts of the case. The replevin suit instituted by plaintiff is upon a Missouri mortgage.''

The sole question for our decision in this case is whether or not the defendant carrier's lien is superior to the rights of the plaintiff, who was the mortgagee of the property in question. It is conceded by counsel here that this precise question has not been passed upon in any jurisdiction.

The chattel mortgage referred to in the agreed statement of facts was in ordinary form. It stated that Rayment lived at 3217 Kossuth, in the City of St. Louis, and that he sold and conveyed the automobile to Metzger, the plaintiff, on condition that he would pay six dollars a week, beginning July 24th, following, for forty-two consecutive weeks. The mortgage provided that Rayment should not remove or attempt to remove the property from his residence except for temporary use.

While this precise question, with all its complications, has not been definitely decided in any decision which has been called to our attention, yet the principle involved has been passed upon in many cases. We are of the opinion that this judgment of the lower court is erroneous, and ought not to be permitted to stand.

It is a universal principle of law that no man can be divested of his property without his consent, and that even an honest purchaser cannot hold against the true owner. If an owner loses his property, or it is pledged without his consent by one who has only a temporary right to use it, or a qualified possession of it, the owner can follow and reclaim it in possession of any person, however innocent. These are merely general and abstract principles of law.

It has been held that the rule of *caveat emptor* should apply to common carriers. One of the reasons urged by respondent as to why this judgment should be upheld is that the carrier is compelled to receive the goods and carry them, and therefore his lien should be superior to that of the mortgagee. But the carrier is not bound to receive goods from a wrongdoer. Nor is a carrier bound to receive goods unless the freight or pay for the carriage is first paid to him, and such carrier may, if he so desires, secure the payment of the carriage in advance.

In Fitch v. Newberry (Mich.), 1 Doug. 1, it is said that a person can neither acquire a lien by his own wrongful act, nor can he retain one when he obtains possession of the goods without the consent of the owner, express or implied.

The case of Owen v. Burlington, etc. Ry. Co., 11 S. D. 153, was a case involving the priority of a lien of a common carrier as against a mortgagee. It was held that the mortgagee's lien was superior

and prior to that of the carrier. It was there stated that the carrier by waiving its statutory right to demand and receive its charges in advance of shipment exposed itself to the risk there encountered, and its lien could not be regarded superior to the mortgage without violating the fundamental principle that no man can be divested of his personal property without his consent, express or implied. It is further stated in that opinion: "If the rule were as contended for by appellant, a chattel mortgage would afford but scanty security, and the common carrier would be, without an obvious distinction upon principle, relieved from a hazard to which other persons in business are constantly subjected." It is true in that case that the carrier had knowledge of the existence of the mortgage, and it involved the question of moving the property from one place to another in the same State.

A well considered and well reasoned case is that of Wright v. Sherman, 3 S. D. 290. That case involved the question of the priority of an agister's lien over a mortgage. The court held that the lien of the chattel mortgage was prior unless the mortgagee had given his consent, and that the mere fact that the mortgagor had retained possession of the property was not proof of such consent. After a thorough discussion of the question of the priority of liens, the court stated: "The principle of those cases which hold that the chattel mortgage remains the precedent lien seems right to us; while to hold that the mortgagee, who has exactly and in good faith met every requirement of the statute, which undertakes to secure and establish his lien upon and interest in the property covered by his mortgage, may be supplanted and undermined without any fault or negligence upon his part, seems an encroachment upon the fundamental rights of property."

Another somewhat similar case is the case of Corinth Engine & Boiler Works v. Mississippi Central R. Co., 95 Miss. 817. In that case the boiler company sold some machinery to one E. O. Kirby, and shipped the same to Kirby in the State of Mississippi, or from one point in the State to another. At the time of the sale the boiler company took a contract from E. O. Kirby, retaining title and ownership of the property until paid for by Kirby. Later one J. N. Kirby delivered the machinery to a railroad company in Mississippi for shipment to a different point in Mississippi, and consigned the shipment to himself. This shipment was made before the notes were paid. J. N. Kirby failed to call for the machinery, and the railroad company undertook to hold the machinery for freight and demurrage as against the boiler works who had reserved title by their contract of sale. The court in that case held, after reviewing the authorities, that the boiler company, who had sold the machinery in

the first instance, could not be compelled to pay freight as a condition precedent to its recovery from a common carrier, although the common carrier received the property from and transported it at the instance of a third person, who bought it from a conditional buyer, and neither the third person nor the carrier had notice of the owner's right.

In Robinson v. Baker (Mass.), 5 Cush. 137, it is held that a common carrier, who innocently receives goods from a wrongdoer, without the consent of the owner, express or implied, has no lien upon them for their carriage against such person.

In the instant case it is conceded that plaintiff did everything which could reasonably be required of him in order to protect his rights and establish the priority of his claim, because it is agreed in the statement of facts that Rayment drove the car out of the State of Missouri without the actual knowledge or consent of the plaintiff herein. The fact that the mortgage provided that Rayment may remove the car from his place of residence for temporary purposes could not be construed as authorizing or permitting him to drive it to Philadelphia, and contract with a carrier to ship the car back to its owner in Missouri, and then such carrier claim its freight charges as a prior lien against the mortgagee when it did nothing to ascertain whether or not the shipper was the owner or to require payment of freight charges in advance.

We are of the opinion, therefore, that the judgment cannot be permitted to stand upon the theory that the defendant's lien was prior to that of the mortgagee, unless it be upon the theory that under the law and the decisions of the State of Pennsylvania, the chattel mortgage recorded in a State other than Pennsylvania does not import notice to any one in Pennsylvania whether the mortgaged article has been removed to that State with or without the consent of the mortgagee. We shall next dispose of this question.

Respondent insists that where a mortgagee consents that a mortgaged chattel may be taken from its *situs,* he waives the priority of the mortgage against every person except the mortgagor. The agreed statement of fact says the mortgagee did not consent to this. It is insisted under the law of comity between States that inasmuch as Pennsylvania does not under its laws recognize the Missouri rule, we must interpret the contract according to the laws of the State of Pennsylvania, where the shipment started, and for that reason the judgment ought to be affirmed.

In 5 Ruling Case Law, page 399, it is said: ''The general consensus of judicial opinion seems to be that when personal property, which at the time is situated in a given State, is there mortgaged by the owner, and the mortgage is duly executed and recorded in the

144

mode required by the local law, so as to create a valid lien, the lien remains good and effectual although the property is removed to another State.'' This mortgage lien is given effect in the State to which the property is removed by virtue of the doctrine of comity. The doctrine of comity between States with respect to conditional sales has been discussed in this State in the case of Parker-Harris Co. v. Stephens, 205 Mo. App. 373, 224 S. W. 1036, and Associates Investment Co. v. Froelich (Mo. App.), 34 S. W. (2d) 987. We have upheld in these cases contracts entered into in other States where the law of the other State has been complied with and where the property was removed to Missouri. Now, in this case we do not have a contest between a citizen of Pennsylvania and a citizen of Missouri. We have a contest wherein the carrier made his contract in Pennsylvania to deliver the property in Missouri, and chose his forum to enforce his lien. It made no request for the payment of charges in advance, taking its chance on enforcing its lien in the State of Missouri, which was the destination of the goods shipped. There were but two places where respondent could enforce his right to collect charges for this shipment. One was at the place where it received the goods, Pennsylvania, and the other at their destination at St. Louis. It did not seek to enforce its right by collecting in advance in the State of Pennsylvania, relying upon the laws of that State, but sought rather to accept the goods, ship them to Missouri, and take a chance on enforcing its lien in this State. The rule of comity does not obtain as a matter of right but is more in the nature of a voluntary or courtesy act on the part of the State recognizing or granting it. The facts of this case in our opinion do not justify us in overruling the positive law of the forum, and there are no authorities which justify or require us to recognize or enforce a foreign law where to do so would prejudice the rights of the citizens of our own State and contravene the positive policy of the law of the forum. Our policy is, and should be, to protect the right of ownership, and it would be to the contravention of the general policy as recognized by the majority of the different states to give effect to the contention of respondent here. Respondent argues that whether the mortgagor was permitted to remove the chattel from the jurisdiction for temporary use only or for permanent use is of no matter so far as the right of the respondent is concerned, which right accrued while the automobile was out of the jurisdiction. Respondent's rights may have accrued when it accepted the property for shipment, but by refusing to demand payment for carriage in advance, it sought to select another forum for the enforcement of these rights, and such rights ought to be enforced according to the law of the forum chosen by the respondent to enforce them.

We do not refer to all the authorities cited by either plaintiff or defendant. We have examined them. The case has been well briefed on both sides, and we have arrived at the conclusion that the lien of the mortgagee is superior to that of the carrier, and that the law of comity does not require, nor would we be justified in holding that the carrier has a superior lien because under the laws of Pennsylvania a chattel mortgage recorded in another State does not import notice to a citizen of Pennsylvania.

Therefore, the judgment of the circuit court is reversed, and the cause remanded. *Haid, P. J.,* and *Becker, J.,* concur.