Cora Doroline BARNES, Administratrix of the Estate of Denzil Larken Barnes, deceased, Plaintiff-Appellant,

v.

BANK OF BOURBON and Marvin Barnes, Defendants,

and

Hazel Barnes, Defendant-Respondent.

No. 12169.

Missouri Court of Appeals, Southern District, Division One.

July 27, 1981.

James L. Bowles, Daniel, Clampett, Rittershouse, Dalton & Powell, Springfield, for plaintiff-appellant.

Warren S. Stafford, Charles B. Cowherd, Taylor, Stafford & Woody, Springfield, for defendant-respondent.

TITUS, Judge.

Plaintiff is the administratrix of the estate of her deceased husband, Denzil Larken Barnes. In her representative capacity, plaintiff filed a three-count action against her mother-in-law (Hazel Barnes), her brother-in-law (Marvin Barnes) and the

Bank of Bourbon to have the estate declared half-owner of a $160,000 savings certificate issued by the Bourbon bank to "Denzil Barnes or Marvin Barnes or Hazel Barnes" and an $8,605.60 interest check issued by the bank on the certificate.[1] Plaintiff's petition additionally sought to enjoin the defendants from disposing of the certificate and check until the estate's interest therein was determined. Sitting without a jury, the trial court declared Hazel Barnes to be the sole rightful owner of the certificate and check. Plaintiff alone has appealed.

After first hearing Hazel's and Marvin's testimony over plaintiff's objections, the trial court later struck their testimony because of the alleged incompetency of the two under the "dead man's statute," § 491.010 RSMo 1978. Although no one involved in this appeal disputes such ruling, we note that Marvin's testimony wherein he disclaims any interest or right to either the certificate or check, or any part thereof, was against his interest and should not have been declared to be within the prohibitory proviso of the statute. *Dougherty v. Strong*, 313 Mo. 27, 36, 281 S.W. 445, 448[2] (1926). Likewise, it has been said that Hazel's testimony consisting of a denial of any knowledge of the involved transaction regarding the Bourbon certificate or check removes the basis for application of the statute inasmuch as it shows that no transaction or communication with the deceased person took place; that is, "a denial of a transaction or communication with a decedent is the exact opposite of testimony as to a transaction or communication with a decedent, and obviously one cannot be a party to a transaction or communication that never existed." 81 Am.Jur.2d, Witnesses, § 356, at p. 370. However, as we believe the result reached by the trial court was correct, even sans the testimony of Marvin and Hazel, our consideration of the cause on appeal will concern only the evidence to which the trial court limited itself remem-

bering, nevertheless, "that the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy v. Carron*, 536 S.W.2d 30, 32[1–2] (Mo. banc 1976); *Cameron Mut. Ins. Co. v. Chitwood*, 609 S.W.2d 492, 493[1–2] (Mo. App.1980); Rule 73.01, subd. 3(a), V.A.M.R. In this connection we also bear in mind that the trial judge had leave to believe or disbelieve all, part or none of any witness' testimony and that the mere fact all or part of plaintiff's evidence went uncontradicted may not be sufficient to satisfy her burden of persuasion. *Cave v. Cave*, 593 S.W.2d 592, 595[5] (Mo.App.1979).

L. B. and Hazel Barnes, husband and wife, were the parents of Denzil and Marvin. Cora, the administratrix-plaintiff in this action, was Denzil's wife. L. B. operated several businesses in Ava where Hazel ran a motel in the same city. Over the years L. B. and Hazel accumulated substantial assets, most of which was jointly owned. They maintained a joint account in the Citizens Bank of Ava under the name of "Barnes General Store." In May 1976 the Ava bank issued its $160,000 certificate of deposit to "L. B. Barnes or Hazel Barnes." Every six months thereafter, to and including November 18, 1978, the bank issued a check to "L. B. or Hazel Barnes" in payment of interest earned on the certificate.

L. B. Barnes died intestate in May 1978. His sons, Marvin and Denzil, were co-administrators of the estate. His widow, Hazel Barnes, disclaimed and renounced all of her interests in the estate. The largest amount of cash ever in the L. B. Barnes' estate, as shown by the inventory and set-

---

1. Albeit plaintiff's petition sought a declaration that Denzil's estate was entitled to one-half of the certificate and interest check, upon appeal

plaintiff's only claim is that the estate is entitled to be declared one-third owner thereof.

tlement reports signed by the administrators, was $25,000 or $30,000. Neither the $160,000 certificate of the Ava bank nor any cash or a similar certificate derived therefrom were ever inventoried or reported as assets of the estate. The $160,000 certificate was reported on the Federal Estate Tax Return filed relative to the estate of L. B. Barnes, deceased, as being owned by L. B. and Hazel Barnes as tenants by the entirety. Those who prepared these reports said they were advised of the nature of the ownership of the certificate by Marvin and Denzil. Money assets of the estate were maintained in the L. B. Barnes' estate account in the Citizens Bank of Ava.

On November 18, 1978, or six months after L. B.'s death, Denzil Barnes took the $160,000 certificate to the Ava bank. It purportedly had been endorsed "Hazel Barnes." Denzil instructed the bank employee who waited upon him to cash the certificate and deposit the proceeds in the L. B. Barnes' estate account. This was done. At the trial herein, the bank employee testified that she did not know Hazel Barnes' signature or whether she had, in fact, endorsed the certificate. Concerning the signature endorsed on the certificate and when asked if it was that of Hazel Barnes, the president of the Ava bank replied: "To the best of my knowledge, and I am no writing expert, but I don't think it is."

The day before Denzil cashed the $160,000 certificate of the Citizens Bank of Ava and had the proceeds therefrom put in the L. B. Barnes' estate account in the Ava bank, Marvin Barnes signed a check on the estate account in the Ava bank in the sum of $160,000 and mailed it to the Bank of Bourbon with directions for that institution to issue a $160,000 certificate of deposit payable to "Denzil Barnes or Marvin Barnes or Hazel Barnes." The Bank of Bourbon on November 18, 1978, issued its savings certificate in the sum of $160,000 payable as directed. On May 18, 1979, the Bank of Bourbon issued its $8,605.60 interest check on the $160,000 savings certificate payable to "Denzil Barnes or Marvin Barnes or Hazel Barnes." Apparently as previously directed, the interest check was sent by mail to the L. B. Barnes General Store in Ava. It was stamped on the back "L. B. Barnes General Store" by a store employee who also signed "Hazel's name because it was going to her account and I signed my initials." The store employee stated he had stamped, endorsed Hazel's name and deposited the check to Hazel's account in the Ava bank in compliance with directions given him by Denzil and Marvin.

Denzil died May 4, 1979, and his widow, the plaintiff herein, was appointed administratrix of his estate. Plaintiff had no knowledge concerning either certificate of deposit aside from overhearing discussions between her husband, Denzil, and her brother-in-law, Marvin. When one or the other had ascertained the Bank of Bourbon was paying a higher rate of interest on certificates than the bank at Ava, plaintiff testified that "Marvin said, 'Let's get it up there.'" Plaintiff's testimony hinted that Hazel was present at the University of Kansas Medical Center shortly before Denzil's death when Denzil, then a patient, and Marvin had some discussion concerning the Bourbon certificate. But what the discussion consisted of was never revealed and what Hazel's reaction thereto was never shown. It is important, we think, that the evidence at trial was wholly devoid of any indication that Hazel, at the times involved, was aware of, consented to or condoned the cashing of the Ava bank's certificate and acquiring, with the proceeds therefrom, a certificate at the Bourbon bank payable to "Denzil Barnes or Marvin Barnes or Hazel Barnes."

As noted in the first paragraph of this opinion and footnote 1, plaintiff's petition was predicated on the presumption that Denzil's estate was half-owner of the Bourbon certificate and interest check issued thereon. We can only speculate, although it seems reasonable to do so, that this was done on some preliminary faulty reasoning that the Ava bank's certificate somehow constituted an asset of the L. B. Barnes' estate and that when Hazel, the widow, renounced her interest therein, the certifi-

cate was something to be eventually divided equally between Denzil and Marvin. However, when the trial testimony and evidence made it most apparent that the Ava bank's certificate belonged to L. B. and Hazel Barnes, husband and wife, as an estate by the entirety [*Fulton v. Fulton*, 528 S.W.2d 146, 157–158[28–30] (Mo.App.1975)], that such certificate was never properly shown or, in fact, claimed to be an asset of L. B.'s estate and that the proceeds derived from cashing the certificate of the Ava bank was the sole source employed in acquiring the Bourbon bank certificate, plaintiff was required to shift her position so as to only claim a third interest in the Bourbon certificate and interest and acknowledge that at least a two-third interest therein reposed in Hazel and Marvin.

It is noteworthy that all four points relied on in plaintiff's brief on appeal mainly, if not exclusively, focus upon the certificate and interest check issued by the Bourbon bank and ignore the fact that the $160,000 employed in purchasing that particular certificate was solely derived from cashing the certificate issued by the Citizens Bank of Ava to "L. B. Barnes or Hazel Barnes" and which became wholly owned by Hazel as the survivor of that tenancy by the entirety. Plaintiff's positions on appeal ignore the fact that it is not sufficient proof of the genuineness of Hazel's signature upon the Ava bank's certificate simply to show her name appeared thereon. *Lally v. Cash*, 18 Ariz. 574, 164 P. 443, 446[8] (1917); 80 C.J.S. Signatures § 8, at p. 1295. Moreover, the only direct evidence on the subject was that Hazel had not endorsed the Ava certificate. In addition, there was a total dearth of evidence that Hazel had ever authorized anyone to endorse her name on the certificate or had, thereafter, acquiesced in any endorsement thereof for her or had ever authorized or condoned the purchase of the $160,000 certificate at the Bank of Bourbon in the name of "Denzil Barnes or Marvin Barnes or Hazel Barnes" so as to create any interest therein in Denzil or Marvin. We are unaware of any authority which would permit the unilateral action by one or more persons to effectively and legally divest an-

other of his lone ownership in an account by the simple expediency of transferring it to an account payable to the unauthorized pseudo-transferors and the original sole owner. No one can be divested of his property without his consent. *State ex rel. Payne v. Wilson*, 207 S.W.2d 785, 789 (Mo. App.1948); *Metzger v. Columbia Terminals Co.*, 227 Mo.App. 135, 141, 50 S.W.2d 680, 681[1] (1932).

■ There can be little question the certificate issued by the Ava bank was owned by L. B. and Hazel as an estate by the entirety and that upon the husband's death the certificate became Hazel's sole property. As the evidence discloses, Hazel did not direct, participate in or condone the cashing of the Ava certificate or in having the proceeds therefrom used in purchasing the Bank of Bourbon certificate in the names of Denzil or Marvin or Hazel. The Bourbon certificate did not comply with the statutory formalities of § 362.470 RSMo 1978 which could have created a joint account with right of survivorship. Neither a statutory presumption of joint tenancy arose, nor, because the facts do not even hint of any intention on Hazel's part to dispose of her sole interest in the Ava certificate, was a valid gift inter vivos shown. Therefore, it follows that the judgment of the trial court declaring Hazel to be the sole rightful owner of the Bourbon certificate and interest check was correct and must be affirmed. *In re Estate of Hitchcock*, 483 S.W.2d 617, 623[6, 7] (Mo.App.1972). Likewise, there is no merit in plaintiff's claim that the transaction involving the acquisition of the certificate at the Bank of Bourbon was supported by consideration flowing to Hazel from Denzil through the latter's services to the estate of L. B. Barnes and in managing the general store after L. B.'s death. Plaintiff's claim in this regard overlooks the fact that Hazel had no personal obligation to compensate Denzil for any services he may have rendered the estate as co-administrator or otherwise and that Denzil was amply paid for his services in operating and managing the store.

Contrary to the mandatory requirement of Southern District Special Rule 1(b), plaintiff's request for oral argument was not endorsed upon the front cover of her brief but appeared in the fourth segment thereof under the section entitled "Argument." For this reason and the fact oral argument would be of no assistance to the court in this matter, the request is denied and the appeal has been determined upon the briefs filed.

Judgment affirmed.

GREENE, P. J., and FLANIGAN, J., concur.