## THE GERMAN INSURANCE AND SAVINGS INSTITUTION
## v.
## FREDERICK G. VAHLE.

*Negotiable Instruments — Discharge — Note — Principal and Surety—Collateral Security—Extension of Time—Evidence—Instructions.*

1. Where the payee of a personally secured note takes, as collateral security, a note secured by mortgage maturing at a later date this does not of itself, in the absence of an agreement to that effect, extend the time or discharge the surety.

2. In the case presented, an instruction to the effect that the mere taking of a note having a longer time to run would not be conclusive proof of an extension, was improperly refused, and evidence to show whether there was an agreement to extend the time of payment was improperly excluded.

[Opinion filed May 25, 1888.]

APPEAL from the Circuit Court of Adams County; the Hon. WILLIAM MARSH, Judge, presiding.

Mr. JOSEPH N. CARTER, for appellant.

A contract between the holder of a promissory note and the principal, to extend the time of payment in order to discharge the surety, must be a binding contract, and founded upon a good and sufficient consideration; and must be an agreement to extend the time of payment for a definite period. It must also have been entered into by the holder of the note and the principal debtor; and the debtor seeking to avail himself of the defense of such release must be simply surety, and known by such holder to be such at the time of such contract. Gardner v. Watson, 13 Ill. 347, 352 and cases there cited; Flinn v. Mudd et al., 27 Ill. 323.

Mr. CHESTER A. BABCOCK, for appellee.

CONGER, P. J.  This was a suit by appellant against appellee upon a promissory note.  The principal facts are as follows:

On the 29th of August, 1883, Conrad Schroder and John B. Tolle, together with appellee, executed to the appellant their promissory note for $800, due in one year from date. The money was paid to Tolle. Schroder and Tolle seem to have been the principals in the note, while appellee was a surety only. The note was not paid at maturity, and on the 3d of September, 1884, the appellant being desirous of further security, Schroder made an arrangement with the officers of the appellant by which he executed to appellant a note for $3,200, dated upon that day and due one year thereafter. This note for $3,200 included the sum of $2,400, which appellant furnished to pay off an existing incumbrance on Schroder's farm to one Baker, and the $800 note previously described and involved in this suit. Schroder, at the same time, executed a mortgage on his farm to secure this $3,200 note.

It is insisted by the officers of appellant that the arrangement was, that if Schroder would procure the signature of Tolle and appellee to the new note for $3,200, then the $800 note should be considered paid and surrendered up to Schroder; but if they did not, appellant would continue to hold the $800 note, and hold the excess of the new note above the amount paid to Baker as collateral thereto, and apply any excess that might arise by sale of the property mortgaged, upon the $800 note.

Schroder does not seem to be entirely clear in his recollection upon this point. He is asked upon cross-examination the following question: "And the balance of that $3,200 was to be as security for the $800 note, wasn't it?" To which he replied: "I don't think there was anything said about that. I did not take up the $800 note. I thought the others would sign the $3,200 note. I didn't know surely that they would."

Appellee never signed the $3,200 note. Appellant afterward foreclosed and sold under their mortgage, and, it appears, bought in the property at the sum of $2,800; but whether there was anything left to apply on the $800 note in suit after paying the expenses and the $2,400 loaned to pay off the Baker mortgage, does not appear, the court refusing to let appellant make the proof upon that point.

German Savings Institution v. Vahle.

The theory of counsel for appellee seems to be that the mere fact that appellant took from Schroder the note for $3,200, secured by mortgage, which included the original note of $800, made a valid extension of time on the latter note until the former matured, and thereby worked the release of the appellee as surety upon the $800 note. The following extract from his brief seems to sustain this view.

"Was the extension for a definite time? Appellant's third point, the testimony of the president, secretary and attorney of appellant, just above cited, answers this query. If the $3,200 note was paid, the $800 note would be paid. This necessarily contemplates awaiting the maturity of the $3,200 note. If the mortgage was foreclosed for non-payment then the proceeds of the foreclosure sale were to be applied, first to costs and expenses of foreclosure and sale, then to the Baker loan, included in the $3,200 note, then the remainder, if any, to the $800 note. Necessarily this implies that the time upon the $800 note was extended until the closing out by payment or foreclosure of the $3,200 note. The extension was for one year from September 3, 1884, or the maturity of the $3,200 note, and as much longer, if default in payment were made, as it might require for foreclosure, or the company might choose to take about such foreclosure. But until the proceeds of that $3,200 note had been applied, as agreed upon, no suit could be brought upon the $800 note."

The same view of the law seems to have been entertained by the court, as the following instruction was refused.

"No. 12. The court instructs the jury that a mere failure of plaintiff to sue on said eight hundred dollar note, or to collect the same, or the taking of collateral security for payment of the same, whether or not such collateral security was in the shape of another note having a longer time to run and bearing interest, would not be conclusive proof of an agreement to extend, or an extension of the time of payment of said eight hundred dollar note."

This instruction should have been given. In Brandt on Suretyship and Guaranty, Sec. 320, it is said: "It has been repeatedly held that the mere fact that the creditor takes from

the principal a mortgage or trust deed of property as collateral security for the debt for which the surety is liable, which matures after the maturity of such debt, does not of itself, in the absence of an agreement to that effect, extend the time or discharge the surety." Burke v. Cruger, 8 Texas, 66; Williams v. Townshend, 1 Bosworth (N. Y.), 411.

In Brengl v. Busby, 40 Mo. 141, a case similar in principle to the one at bar, it is said: "After the maturity of a note upon which principal and surety were liable, the principal executed and delivered to the creditor as collateral security a mortgage of real estate, to secure a larger sum than the note, in which the amount of the note was included. The mortgage contained a covenant on the part of the mortgagor to pay the money on a day therein named, but no provision that the right of action on the note should be suspended. Held, the remedy on the note was not suspended, and the surety was not discharged." Baylies on Sureties and Guarantors, Sec. 9.

" Whether there was or not an agreement to extend the time, may be shown by parol." Morse v. Huntington, 40 Vt. 488.

As the mere taking of the $3,200 note and mortgage did not of itself release appellee from the note in suit, it remains to determine whether there was any such contract entered into between appellant and Schroder as would produce that effect. Upon this point we shall express no opinion, as the case will have to be submitted to another jury. But we think the court erred in refusing to permit Govert to answer the following question: "Was there anything in any of the conversations said about extending the time of the $800 note?" The witness was attempting to give to the jury a statement of the various conversations between the officers of appellant and Schroder, in reference to the purpose of executing the new note and mortgage, and it would be quite important to show whether there had been any agreement to extend the time of payment of the $800 note, as we have seen the mere taking of the new note and mortgage would not of itself work such an extension.

Appellant should have been permitted to show the disposition of the proceeds of the sale of the mortgaged property,

because, if the jury should reach the conclusion that there had been no valid extension of time by which appellee would be released, then it would be important to know whether any of the proceeds arising from the sale of the mortgaged property either were, or should have been applied, as a payment upon the note in suit.

For the errors indicated the judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*