JOHN C. WISDOM, PLAINTIFF IN ERROR, v. E. A. KEITHLEY, JAMES WALTER LEWIS, AND WALTER MCPHERSON, HENRY HOUCHENS, AND HOLLAND MOORE, DOING BUSINESS AS SCOTLAND COUNTY SALES COMPANY, DEFENDANTS IN ERROR.—167 S. W. (2d) 450.

St. Louis Court of Appeals. Opinion filed January 5, 1943.

Motion of Defendants in Error for Rehearing Overruled January 22, 1943.

Petition for Writ of Certiorari Denied March 2, 1943.

*Davis Benning* and *Wisdom & Wisdom* for plaintiff in error.

80

*May & May* for defendants in error.

82

BENNICK, C.—This is a proceeding by writ of error sued out in this court to review the final judgment rendered by the Circuit Court of Pike County in an action brought by John C. Wisdom, as plaintiff, against E. A. Keithley, James Walter Lewis, and Walter McPherson, Henry Houchens, and Holland Moore, doing business as Scotland County Sales Company, as defendants. The plaintiff below is the plaintiff in error, and the defendants below are the defendants in error.

The action was one for damages for the alleged conversion, in Missouri, of eight two-year-old Hereford steers which were covered by a chattel mortgage duly executed and recorded in Iowa where the steers were located at the time they bcamie subject to the mortgage. Action was brought by plaintiff, the mortgagee, who resides in Des Moines, Iowa; and judgment was sought against defendants, all of whom are residents of Missouri, for the sum of $525.60, which sum was both alleged and found to be the reasonable value of the eight steers at the time of their conversion. Judgment was rendered

against plaintiff, and in favor of defendants; and this proceeding has followed on plaintiff's application for the issuance of a writ of error upon such judgment.

Incidentally, the scope of our review in this proceeding by writ of error is identical with that which would obtain if the case were here on plaintiff's appeal from such judgment; and the question of whether matters of exception occurring in the course of the trial may be reviewed is therefore dependent upon whether or not such matters have been preserved in a bill of exceptions so as to extend the review beyond the face of the record proper. [Spotts v. Spotts, 331 Mo. 917, 55 S. W. (2d) 977; State ex rel. v. Green, 230 Mo. App. 805, 76 S. W. (2d) 432.] Under our practice, a motion for a new trial is essential to the review of a case upon matters of exception which the trial court is entitled to have called to its attention by such a motion so as to afford it an opportunity to correct its own errors short of an appeal. [Spotts v. Spotts, *supra*,] In the case below, a motion for a new trial was filed, but out of time; and in such situation our review is necessarily restricted to the record proper, and only such errors as are apparent on the face of the record proper may be considered in this proceeding. [Lee's Summit Building & Loan Association v. Cross, 345 Mo. 501, 134 S. W. (2d) 19.]

The case was tried to the court alone without the aid of a jury; and upon the submission of the case plaintiff requested the court to state in writing its conclusion of facts found separately from its conclusions of law as provided by Section 1103, R. S. Mo. 1939 (Mo. R. S. A., sec. 1103). In obedience to such request, the court, in rendering its decision, did separately state its findings of fact and conclusions of law; and a preliminary question of obvious importance in the case is the question of whether, on the record before us, such findings and conclusions are a part of the record proper so as to come within the scope of our review.

Strictly speaking, the findings of fact and conclusions of law called for by Section 1103 have no proper connection with, nor are they designed to supplant, the general findings, which, as a matter of good form, are usually incorporated in the judgment itself as the basis for the judgment. On the contrary, proper procedure would dictate that the court's statutory findings should be made and filed entirely separate from the judgment itself to the end that the party requesting the findings may except to the same and have his exceptions preserved in a bill of exceptions. But while this is so, it is none the less true that in an action at law the trial court may nevertheless make its findings of fact and conclusions of law a part of its judgment and thereby a part of the record proper; and where this is done, and appellate review is restricted to the record proper, while there may be no point raised as to whether the evidence in the case supports the findings of the court, the question of whether the findings support

the judgment may be reviewed without the presence of a bill of exceptions. [Snuffer v. Karr, 197 Mo. 182, 94 S. W. 983; Fruin v. O'Malley, 241 Mo. 250, 145 S. W. 437; State ex rel. v. Wright, 339 Mo. 160, 95 S. W. (2d) 804; City of Webster Groves v. Hunt (Mo. App.), 234 S. W. 1006.]

The record discloses that in the case in question, the latter course was the one followed by the court in connection with the rendition of its judgment. As already indicated, the court took the case under submission accompanied by plaintiff's request that it state in writing its conclusions of facts found separately from its conclusions of law, and its subsequent compliance with such request is evidenced by but a single record entry reciting the findings of fact and the conclusions of law, and terminating with the usual form of expression, which in this instance was that "wherefore," or by reason of such findings and conclusions, plaintiff should take nothing by his action, and the findings and judgment should be in favor of defendants with costs. Having been thus expressly incorporated in the judgment, the findings of fact and conclusions of law became a part of the record proper, and are therefore reviewable in this proceeding upon the question of whether they support the ultimate decision in the case.

Issue was joined in the pleadings upon the question of whether the Iowa mortgage was entitled to be accorded full force and effect in the action in this state, when the steers alleged to have been converted by defendants were not acquired by the mortgagor until after the execution of the mortgage, and were purchased by defendants in this state in good faith on the open market, and without actual knowledge of the existence of the mortgage.

As already pointed out, plaintiff, Wisdom, resides in Des Moines, Iowa, where he is engaged in the livestock business. Defendants McPherson, Houchens, and Moore reside in Scotland County, Missouri, and are engaged in the operation of a sales barn at Memphis, in said County, under the style and name of Scotland County Sales Company. Defendant Lewis is a resident of Schuyler County, Missouri, while defendant Keithley resides in Pike County, Missouri, which was chosen as the venue for the prosecution of the action.

In entering its judgment, the court found the facts of the case to be as follows:

On October 13, 1939, one Fuller, of Van Buren County, Iowa, executed and delivered to plaintiff a certain promissory note, to secure the payment of which he also executed and delivered to plaintiff a chattel mortgage providing that not only should the livestock and chattels therein described be security for the debt presented by the note, but that all additions thereto, and all livestock thereafter acquired by the mortgagor prior to the satisfaction of the debt, should also stand as security for the same. It was further provided in the mortgage that all chattels and livestock covered by the mortgage

should be kept on the mortgagor's premises in Van Buren County, Iowa, and that any attempt of the mortgagor to remove said livestock from his premises, or to dispose of the same, should constitute a violation of the terms and conditions of the mortgage, entitling the plaintiff to their immediate possession.

The mortgage was duly filed for record in the office of the County Recorder of Van Buren County, Iowa, and at the time of the trial of the action below there was a balance due and owing from the mortgagor to plaintiff in excess of the value of the eight head of steers.

On December 23, 1939, plaintiff sold the eight head of steers to the mortgagor, and delivered the same to the mortgagor's premises in Van Buren County, Iowa, where they were to be kept under the terms and conditions of the mortgage.

Thereafter the mortgagor, in violation of the terms and conditions of the mortgage, removed the steers to the sales barn of defendants McPherson, Houchens, and Moore at Memphis, Missouri, where, on December 26, 1939, the steers were sold by said defendants to defendant Lewis, and the proceeds of the sale paid over to the mortgagor, less the commission charge retained by defendants McPherson, Houchens, and Moore for their services as auctioneers or brokers. The steers were then in turn sold by defendant Lewis to defendant Keithley, and delivered to his farm in Pike County, Missouri, where Keithley took possession of them, and commingled them with his other livestock on the place.

As for the law to be applied upon such facts, the court concluded that plaintiff's petition had failed to state a cause of action in that it did not plead the chattel mortgage statute of Iowa controlling and governing the legal force and effect of chattel mortgages as affecting financial and trade obligations and transactions, nor did it plead the statute affecting and concerning the recording of chattel mortgages in Iowa.

The court further concluded that defendants, being residents of Missouri, were not chargeable with notice of the Iowa mortgage and were not affected or bound by its terms, but that in their relation to any chattel mortgage security concerning and affecting the sale of the steers, they were governed and controlled by the laws of Missouri, and particularly the chattel mortgage statute of Missouri.

Having reached such conclusions with respect to the law of the case, the court entered judgment against plaintiff, and in favor of defendants; and as already indicated, the question in this proceeding is whether the findings warrant such conclusions so as to support the ultimate decision in the case.

The most serious question in the case has to do with the propriety of the court's conclusion that the petition failed to state a cause of action in the absence of the specific pleading of an Iowa statute

making the recording of a chattel mortgage constructive notice of its existence and contents.

Recognizing the necessity of pleading the Iowa law inasmuch as his cause of action for the conversion of the steers was solely dependent upon rights acquired under the Iowa mortgage, plaintiff pleaded the law of Iowa to be that "a duly recorded chattel mortgage on after-acquired property is valid notice to the world of the rights of the mortgagee, without any further act on his part, and that such a mortgage is binding on all persons dealing with such after-acquired property to the same extent and in the same manner as persons dealing with the property originally enumerated in such mortgage."

The petition included quotations from decisions of the Supreme Court of Iowa declaring such to be the law in that State, not only with respect to the constructive notice imparted by virtue of the recording of the mortgage, but also with respect to the validity of a clause in the mortgage extending its coverage to property subsequently acquired by the mortgagor prior to the satisfaction of the debt secured by the mortgage. However the Iowa chattel mortgage statute itself was not specifically pleaded, although as pointed out by plaintiff in his brief, in at least one of the decisions of the Supreme Court of Iowa which were referred to in the petition, as well as in other applicable decisions of that court of which, under the circumstances, we take judicial notice, it affirmatively appears that there is such a statute which provides, in effect, that when a valid chattel mortgage is duly recorded as required by law, it becomes notice to all the world of the mortgagee's rights thereunder, and constitutes in the mortgagee a valid and prior lien over the rights of subsequent purchasers who may take without actual knowledge of the existence of the mortgage. The matter in issue on this phase of the case is to be determined in the light of Section 958, R. S. Mo. 1939 (Mo. R. S. A., sec. 958) which provides that "in every action or proceeding wherein the law of another state of the United States of America is pleaded, the courts of this state shall take judicial notice of the public statutes and judicial decisions of said state." This has been interpreted to mean that when the ultimate fact of the law of a sister state is pleaded, such pleading compels the local court to take judicial notice of the public statutes and judicial decisions of such state which pertain to the rule of law actually pleaded, and which are applicable to the case pending in the local jurisdiction but determinable, as to substantive rights, under the law of the sister state. [Menard v. Goltra, 328 Mo. 368, 40 S. W. (2d) 1053.]

The obvious legislative intent in the enactment of such statute was to abrogate the old rule which required the law of a foreign state to be both pleaded and proved as any other factual issue in the case, and to substitute instead a new and more appropriate rule,

which, in those instances where the pleader invokes the benefits of the foreign law, serves the purpose of effectively and expediently placing the local court in the same status as a court of the foreign state itself insofar as concerns the court's right to have recourse to the applicable foreign law, and of thereby making it possible for the court, acting within its special province as the arbiter of the law, to determine what the law of the case is so that it may apply it according to its terms. Such law may, be evidenced and declared either by statutes or by court decisions; and good pleading would dictate that the one who seeks to invoke the benefits of the foreign law need only plead the ultimate fact of what the law is, and not the evidence by which it might otherwise be established. Once the ultimate fact of the law is pleaded, the local court takes judicial notice of the public statutes and court decisions evidencing and declaring it, which means, from a practical standpoint, that with the necessity for all formal proof of the law dispensed with, the litigant who desires to have the advantage of such judicial notice shall thereupon, in the identical manner as when only local law is involved, suggests to the court what he conceives to be the applicable statutes and decisions of the foreign state with respect to the law in question, and assist the court in examining at the proper sources for actual information upon the question. [Corbett v. Terminal R. Assn. of St. Louis, 336 Mo. 972, 82 S. W. (2d) 97.]

As we have already pointed out, plaintiff did plead, in general terms, what the law of Iowa was with respect to those elements of his cause of action which were solely dependent upon the law of Iowa; and with the law of Iowa thus invoked, the courts of this state, in the adjudication of the case, are required to take judicial notice of all pertinent Iowa statutes and court decisions, including, of course, the statute and decisions which declare and apply the law that the recording of a chattel mortgage in the county of the mortgagor's residence is constructive notice to all the world of its existence and contents. In this view of the matter, the petition must be held to have stated a cause of action; and the court was therefore in error in its conclusion that the petition was fatally defective for the want of special pleading of the Iowa chattel mortgage statute.

The statute in question is Section 10015, Code of Iowa 1939, which provides that no mortgage of personal property, where the mortgagor retains actual possession thereof, shall be valid against existing creditors or subsequent purchasers, without notice, unless a written instrument conveying the same is executed and acknowledged, and such instrument, or a duplicate thereof, is duly recorded, or filed and deposited with the recorder of the county where the property shall then be situated, or if the mortgagor be a resident of Iowa, then of the county where the holder of the property resides.

Likewise the court decisions of Iowa support the rule, not only that a duly recorded chattel mortgage is constructive notice to all the world of its existence and contents, but also that when the intention is clearly expressed in the instrument, subsequently acquired property may be included in a chattel mortgage which is given to secure an existing indebtedness. [Farmers' Trust & Savings Bank of Laurens v. Miller, 203 Iowa, 1380, 214 N. W. 546; Lowden Savings Bank v. Zeller, 196 Iowa, 1205, 194 N. W. 966; Wheeler v. Becker, 68 Iowa, 723, 28 N. W. 40; Stephens v. Pence, 56 Iowa, 257, 9 N. W. 215; Live Stock National Bank of Sioux City v. Julius, 187 Iowa, 748, 174 N. W. 489.]

As a matter of fact, defendants do not question that such is the law of Iowa, but only question its application to the facts of the case at bar, where the conversion occurred in Missouri, and the liability to be enforced is that of persons who were found to have dealt innocently with the property and without actual knowledge of the existence of the mortgage.

The great weight of authority, with which Missouri is in full accord, is that a chattel mortgage, properly executed and recorded according to the law of the state where the mortgage is executed and the property is located, will, if valid in such state, be likewise held valid as against existing creditors and subsequent purchasers in another state to which the property may be permanently removed by the mortgagor wthout the mortgagee's consent, unless the mortgage or transaction is of a character to contravene some statute or the settled law or policy of the forum. The matter is one reposing in the principle of comity between states; and it is under such principle that the mortgage will be given effect in the state to which the property is removed. [The National Bank of Commerce of Kansas City v. Morris, 114 Mo. 255, 21 S. W. 511; Metzger v. Columbia Terminals Co., 227 Mo. App. 135, 50 S. W. (2d) 680; Finance Service Corp. v. Kelly (Mo. App.), 235 S. W. 146; Geiser Mfg. Co. v. Todd (Mo. App.), 204 S. W. 287, 289; 14 C. J. S., Chattel Mortgages, sec. 15; 10 Am. Jur., Chattel Mortgages, sec. 21.]

W know of no statute in this state which relates to the validity of chattel mortgages, executed in another state, and consequently there is no question in the case of the contravention of a local statute. Such a statute as might be contravened would be a statute expressly applying to mortgages executed out of the state, and not one which might, in certain respects, require something different from the law of the state in which the mortgage was executed. [Jerome P. Parker-Harris Co. v. Stephens, 205 Mo. App. 373, 224 S. W. 1036.]

Neither does it contravene the settled law or policy of this state to give force and effect to the mortgage in question, even though the Iowa law which validates the clause extending the coverage of the mortgage to after-acquired property differs from our local law,

which is that only an equitable lien attaches to after-acquired property when the same comes into existence or is acquired by the mortgagor, and that legal title will not pass unless the mortgagee takes possession of the property before the rights of innocent third parties have attached. [Steckel v. Swift & Co. (Mo. App.), 56 S. W. (2d) 806; Langford v. Fanning (Mo. App.), 7 S. W. (2d) 726.]

However a mere variance in the law of the two states does not in itself evidence a difference in policy, as that term is employed in its application to a rule of law or course of action which a particular state either adopts upon the theory that its tendency is to promote the public welfare, or else rejects upon the ground that its probable effect is to be injurious to the public welfare. [Jerome P. Parker-Harris Co. v. Stephens, *supra.*] Quite obviously there is no such question involved in the present case; and as nearly as we may be said to have a policy with respect to chattel mortgages validly executed in another state upon property located in such state, it is, upon the principle of comity, to enforce such mortgages according to their terms, and this notwithstanding the fact that upon the removal of the property to this state without the mortgagee's consent, citizens of this state may become innocently involved to their loss and prejudice in their subsequent dealings with the property.

This brings us finally to the question of the personal liability of the several defendants in the case.

Defendants Lewis and Keithley, while innocent purchasers of the steers in the sense that they had no actual knowledge of the mortgage, must nevertheless be held to have purchased the same at their own risk and peril so as to be liable to plaintiff mortgagee who became entitled to the immediate possession of the steers upon the mortgagor's breach of the provision in the mortgage which required that the steers be kept on the mortgagor's premises until the mortgage debt was satisfied. [Schmidt v. Rankin, 193 Mo. 254, 91 S. W. 78.]

Incidentally, no defense was made that the steers were moved into Missouri with plaintiff's knowledge, acquiescence, or consent, but on the contrary, the court's findings of fact presuppose the lack of plaintiff's knowledge, acquiescence, or consent.

As for defendants McPherson, Houchens, and Moore, doing business as Scotland County Sales Company, the court's findings were that they sold the steers at their sales barn as agents of Fuller, the defaulting mortgagor, and that following the sale they remitted the proceeds, less their commission, to Fuller.

They, too, were found to have acted innocently and without knowledge of the existence of the mortgage, but they are none the less personally liable to plaintiff for the conversion of the steers. It was their business, as Fuller's agents, to ascertain his right to have the steers sold at the auction they conducted, and it is no defense for them

to say that they acted under Fuller's authority, when the fact was that Fuller had no authority. However innocent they were of plaintiff's claim, and however unaware they were of Fuller's lack of right to sell, these defendants, by selling the mortgaged steers and remitting the proceeds to Fuller, became participants in the conversion, and are equally liable with the other defendants who were the purchasers of the steers. [Mohr v. Langan, 162 Mo. 474, 501, 63 S. W. 409; Arkansas City Bank v. Cassidy, 71 Mo. App. 186, 199; Everett v. Barse Live Stock Commission Co., 115 Mo. App. 482, 487, 88 S. W. 165; The City National Bank v. Goodloe-McClelland Commission Co., 93 Mo. App. 123, 138.]

The court's findings of fact not only failed to support the judgment which was rendered, but indeed disclosed a situation which could only properly result in the entry of judgment for plaintiff.

The Commissioner accordingly recommends that the judgment of the circuit court be reversed and the cause remanded with directions to the circuit court to enter up judgment for plaintiff as prayed in his petition.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed and the cause remanded in accordance with the recommendations of the Commissioner. *Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.