HILLS BANK AND TRUST COMPANY, Plaintiff-Appellant, *v.* ARNOLD CATTLE COMPANY, Defendant-Appellee.

(No. 73-275;

Third District—September 17, 1974.

*Rehearing denied October 11, 1974.*

David Thompson, of Winstein, Kavensky & Wallace, of Rock Island, for appellant.

Rick Moskowitz, of Bozeman, Neighbour, Patton & Noe, of Moline, for appellee.

Mr: JUSTICE ALLOY delivered the opinion of the court:

Plaintiff, Hills Bank and Trust Company, appeals from a judgment of the Circuit Court of Henry County granting a motion for summary judgment to defendant, Arnold Cattle Company, in an action to recover damages for the conversion of 144 head of cattle upon which plaintiff held a security interest.

The action with which we are concerned was originally commenced by Hills Bank and Trust Company, an Iowa corporation, against defendant, Arnold Cattle Company, a Delaware corporation, to recover damages for conversion of 144 head of cattle upon which the bank held a security interest under chattel mortgages executed in 1964 and in 1966, by one G. E. Grace, an Iowa farmer. A financing statement evidencing the plaintiff's security interest was properly filed in Iowa in the Johnson County recorder's office on July 5, 1966. On December 6, 1967, Grace brought the 144 head of cattle from Iowa to the place of business of Arnold Cattle Company in Illinois. At that time and location, defendant, Arnold Cattle Company, auctioned the cattle and disposed of them by sale.

Nearly 5 years later, on November 21, 1972, judgment was confessed by Grace upon the promissory notes which the mortgages had secured. Before the confession of judgment, however, Grace requested and received from plaintiff releases of the chattel mortgages. These releases were filed of record on November 22, 1972. On December 4, 1972, the present action was commenced as against defendant Arnold Cattle Company.

■■ In support of the trial court's decision, granting summary judgment to defendant on the motion made in the trial court, defendant, among other things, argues that it is the intent of the Uniform Commercial Code

(Ill. Rev. Stat. 1971 ch. 26, § 1—101 *et seq.*) hereinafter referred to as the "Code", to allow a secured party only those remedies that are provided in section 9—501, which, the defendant contends, limits the secured party to those remedies that it may have as against the debtor and therefore precludes any remedies the secured party may have against third parties. We do not agree with the reasoning of defendant on this issue. While it is true that article 9 of the Code contains no specific provision establishing a cause of action against a third party for the conversion of property upon which another holds a security interest, that omission does not preclude or pre-empt another remedy. It is made manifest that no such pre-emption was intended in section 1—103 of the Code, which states in part:

> "Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."

Thus, as is stated in the official comments (S.H.A., ch. 26, § 9—306, at 403 (1963)):

> "In most cases when a debtor makes an unauthorized disposition of collateral, the security interest, under prior law and under this Article, continues in the original collateral in the hands of the purchaser or other transferee. That is to say, since the transferee takes subject to the security interest, the secured party may repossess the collateral from him or in an appropriate case maintain an action for conversion."

See, *e.g., Farmers State Bank v. Stewart,* 454 S.W.2d 908, 916 (Mo. App. 1970); *Clovis National Bank v. Thomas,* 77 N.M. 554, 425 P.2d 726, 731 (1967).

In absence of facts creating a waiver or release or showing an acquiescence or consent to the sale, the defendant, Arnold Cattle Company, an auctioneer, became liable to the plaintiff for the conversion of the cattle in 1967 when defendant sold the cattle. As stated at 96 A.L.R.2d 208, 210 (1964):

> "The great weight of authority follows the rule that a sale by an auctioneer for a principal who has no title to the property or who holds it subject to a mortgage or other lien, or who for other reasons has no right to dispose of it, entails liability to the true owner, lienor, or conditional vendor, as for a conversion, on the part of the auctioneer who sells it under such circumstances, pays over the proceeds to the principal, and hands the property over to the

purchaser with a view to passing the title to him, notwithstanding the auctioneer acts without knowledge of the principal's lack of authority to sell * * *."

See *Farmers State Bank v. Stewart*, 454 S.W.2d 908 (Mo. App. 1970); *Clovis National Bank v. Thomas*, 77 N.M. 554, 425 P.2d 726, 731 (1967); *Rapid City Production Credit Association v. Transamerica Insurance Co.*, 85 S.D. 395, 184 N.W.2d 49 (1971); *Duvall-Wheeler Livestock Barn v. United States*, 415 F.2d 226 (5th Cir. 1969).

Since the record does not disclose any evidence of consent or acquiescence to the sale of the cattle, the issue to which this court will first direct its attention is whether or not the release of the security interest in the cattle did in fact waive plaintiff's cause of action for defendant's conversion of cattle or release such cause of action. It is important to note that whether or not there is a waiver or release of a cause of action is a matter which hinges on the intention of the parties involved. (76 C.J.S. *Release* §§ 24, 38, 51 (1952); 31 I.L.P. *Release* §§ 6, 21, 26 (1957); 18 I.L.P. *Estoppel* § 21 (1956); *Shaw v. Close*, 92 Ill.App.2d 1, 235 N.E.2d 830 (1st Dist. 1968); *Podbielniak v. Podbielniak*, 38 Ill.App.2d 451, 187 N.E.2d 454 (1st Dist. 1962); *Butcher v. United Electric Coal Company*, 174 F.2d 1003 (7th Cir. 1949).) The plaintiff contends that there was no intention to waive or release its cause of action against the defendant when it released the chattel mortgages. In support of its position, the plaintiff first argues that it was required to execute such releases under section 9—404 of the Code since there no longer existed any collateral or proceeds of the collateral which could secure the outstanding obligation (when the cattle were sold by the auctioneer in 1967). With this argument we cannot agree. Section 9—404 of the Code, prior to its amendment effective July 1, 1973, stated in pertinent part:

"Whenever there is no outstanding secured obligation and no commitment to make advances, incur obligations or otherwise give value, the secured party must on written demand by the debtor send the debtor a statement that he no longer claims a security interest under the financing statement, which shall be identified by file number."

Obviously the authors of the Code did not intend this to permit a debtor to force a release of a security interest by illegally disposing of the collateral. For this reason alone we believe it clear that where a secured obligation has not been satisfied and the collateral or proceeds of the collateral have not been transferred to the secured party in reduction of the outstanding obligation, the secured party is not required under section 9—404 to release any security interest it may have upon the collateral. Specifically, a debtor can only force such a release by the secured

party by paying the total amount due or applying the collateral or the entire proceeds from the sale of the collateral to the debt. The fact that the plaintiff was not required to release its chattel mortgages, however, does not necessarily mean that its release of the mortgages waived or released its causes of action for conversion against Grace or the defendant. This, as stated above, is a question of the parties' intention.

To the extent that the parties' intention can be demonstrated by a clear and unambiguous written instrument signed with full knowledge of its contents and without any fraud, mistake, or duress, the matter is a question of law and one to which this court may properly direct its attention upon review and one to which the trial court could properly direct its attention upon defendant's motion for summary judgment. (76 C.J.S. *Release* § 72(f) (1952); *Atlantic Coastline R.R. Co. v. Boone*, 85 S.2d 834 (Sup. Ct. Fla. 1956); *Warrior Constructors, Inc. v. E. C. Ernst Co.* 127 Ga. App. 839, 195 S.E.2d 261 (1973); *Dial Temp Air Conditioning Co. v. Faulhaber*, 340 S.W.2d 82 (Tex. Civ. App. 1960); *Hilley v. Blue Ridge Insurance Co.*, 235 N.C. 544, 70 S.E.2d 570 (1952).) Where, however, the evidence is conflicting regarding the parties' intentions in the execution of a document which is unclear in its terms, the issue is a question of fact for a trier of fact to decide. 76 C.J.S. *Release* § 72(f) (1952); *Butcher v. United Electric Coal Co.*, 174 F.2d 1003 (7th Cir. 1949).

In the present situation the release made by the plaintiff reads:

"The Hills Bank & Trust Company, Hills, Iowa, hereby releases the following Chattel Mortgages executed to said bank by G. E. Grace and authorizes the Johnson County Recorder to cancel the same on his books and records:

1. File Number R188 dated June 20, 1964;
2. File Number I447 dated May 6, 1965;
3. File Number L472 dated April 28, 1966; and
4. File Number L474 dated April 28, 1966.

Dated this 26th day of October, 1972."

Just as we cannot as a matter of law say that the mere release of a mortgage conclusively indicates the satisfaction of its underlying obligation (59 C.J.S. *Mortgages* § 475 (1949)), we cannot as a matter of law say that the above release, which makes no mention of releasing anything more than the mortgages, releases the plaintiff's cause of action based on conversion against the defendant.

■■ Nor can we say as a matter of law on the record before us that plaintiff's acceptance of the confessed judgment *ipso facto* waived its cause of action for conversion. Again, it is the intention of the parties which is determinative, and such an issue where disputed is one for the trier of fact to decide. In other words, the acceptance of additional, new

or substituted security such as the confessed judgment from one obligor (*e.g.,* Grace) does not necessarily release a third party (*e.g.,* defendant) on another or similar cause of action.

Thus, in *Lusk v. Throop,* 189 Ill. 127, 59 N.E. 529 (1901), defendant promised the plaintiff, a grocer, that defendant would pay for whatever supplies plaintiff furnished to a third party. Later defendant requested that plaintiff take notes and chattel mortgages from the third party as security for the debt. In response to defendant's argument on appeal that plaintiff's acceptance of the notes and mortgages constituted a release of defendant's obligation to plaintiff, our Supreme Court stated pages 137-138:

> "* * * Complaint is made by the appellants that the third instruction given for the appellees, which calls attention to these notes and mortgages, was erroneous. That instruction told the jury that, if they believed from the evidence, facts and circumstances proven on the trial that the plaintiffs, in taking the notes and chattel mortgages from Carlson & Olson, did not intend thereby to release any claim they had against the defendants, if any claim they had, then the plaintiffs did not, by taking said notes and chattel mortgages, release any claim or indebtedness they had against the defendants, if the jury should find from the evidence they had any such claim.
>
> The execution of these notes and mortgages presents a question in the case whose solution is attended with much difficulty. The fact, that these notes and mortgages were taken is a strong circumstance, standing by itself, to support the contention of the appellants, but, upon a consideration of the whole case, we are satisfied that the court committed no error in leaving it to the jury to determine, whether the taking of the notes and mortgages amounted to a release of the claim of the appellees against the appellants or original promisors."

See also 72 C.J.S. *Principal and Surety* § 154 (1951); *Oxley v. Storer,* 54 Ill. 159 (1870); *German Insurance & Savings Institution v. Vahle,* 28 Ill.App. 557 (3rd Dist. 1887).

■■ Since the record before us is incomplete on the question of the intention of the parties and since there is a significant factual question to be determined on that issue, the trial court's allowance of defendant's motion for summary judgment was improper and such judgment is therefore reversed and the cause is remanded for trial.

Reversed and remanded.

STOUDER and DIXON, JJ., concur.