SANBORN COUNTY BANK, INC.,
Plaintiff and Appellant,

v.

MAGNESS LIVESTOCK EXCHANGE, INC., Defendant and Appellee,

and

Gary Willman, Third Party Defendant and Appellee.

No. 15577.

Supreme Court of South Dakota.

Argued April 21, 1987.
Decided Aug. 12, 1987.
Rehearing Denied Sept. 16, 1987.

Chris A. Nipe of Bridgman, Larson and Nipe, Mitchell, for plaintiff and appellant.

Gale Fisher, Fisher & Hughes, Sioux Falls, for defendant and appellee.

Gary Willman, pro se.

WUEST, Chief Justice.

Bank appeals trial court's grant of summary judgment in favor of an auction agency on the issue of conversion. We reverse and remand.

In 1982, Sanborn County Bank, Inc. (Bank) held a perfected security interest in the current and after-acquired livestock of Leonard Vetter (Vetter), a rural Woonsocket, South Dakota farmer. The security agreement required Vetter to give notice and receive Bank's written consent before selling or removing livestock or other collateral from Sanborn County. In 1984, Vetter sold sheep covered by the security agreement by delivering the sheep to Magness Livestock Exchange, Inc. (Magness), an auction agency located in Huron, South Dakota, where they were sold on commission to various third party buyers. Vetter failed to remit any proceeds of the sales, and Bank sued Magness for conversion. The trial court granted summary judgment for Magness and Bank appeals.

The main issue on appeal is whether the livestock sales company is liable for conversion as a matter of law. In its memorandum opinion the trial court held that the livestock were no longer classified as "farm products" under SDCL 57A-9-109 and Comment 4 to U.C.C. § 9-109 but became "inventory" once they came into the "possession" of the marketing agency. Therefore, the court held, the farm products exception within 9-307(1) did not apply to preserve the agricultural lender's security interest from the general rule under 9-307(1), the buyers took the collateral free of the Bank's security interest, and the livestock sales company was not liable for conversion.

The "farm products" rule has been widely criticized. *See* K.G. Meyer, Agricultural Credit and The Uniform Commercial Code: A Need For Change, 34 U.KAN.L.REV. 469 (1985); D.L. Uchtenann, The U.C.C. Farm Products Exception—A Time to Change, 69 MINN.L.Rev. 1315 (1985).[1]

Magness convinced the trial court that once they were given possession of the livestock for sale, the farm products classification ceased and the livestock became inventory, thereby relieving them from any liability for conversion.[2] Magness, and the trial court as well, relied on the decision in

---

1. Problems that have developed under the farm products rule have resulted in recent legislative action. In 1985, the Permanent Editorial Board of the U.C.C. appointed a subcommittee to make recommendations concerning the farm products rule. Before the Board was able to amend the rule Congress passed the Food Security Act of 1985, 7 U.S.C. § 1631 (1985). In section 1631, a provision buried in the 1985 Farm Bill, Congress changed most state and federal law dealing with the sale of farm products subject to a perfected security interest. Section 1631(a) declared that purchasers' exposure to double payment constitutes a burden and obstruction to interstate commerce in farm products, and section 1631 altered this burden for the benefit of buyers and commission merchants.

In response to this federal legislation, the 1987 South Dakota Legislature enacted House Bill No. 1243, entitled, *"An Act to implement a central filing system in the Secretary of State's office in compliance with federal law."* However, since House Bill No. 1243 was not effective until July 1, 1987, the parties in this case are not covered by the procedural rights and requirements of the state or federal legislation.

2. Bank relies on *Aberdeen Prod. Credit v. Redfield Livestock,* 379 N.W.2d 829 (S.D.1985). In that case we did not deal with the farm products exception and the issues dealt with there are not conclusive of the conversion issue as presented by this case.

*United States v. Progressive Farmers Marketing Agency*, 788 F.2d 1327 (8th Cir. 1986). In *Progressive,* the court held the explicit language in official comment 4 of section 9–109 indicates that farm products become inventory "when they come into the hands of the commission merchant." The Eighth Circuit Court of Appeals then held that the farm products exception did not apply and the commission merchant could not be held liable for conversion.

We do not agree. While the transferee is not liable in circumstances where he takes free of the creditor's security interest by virtue of applicable provisions of commercial law, liability for conversion by an auction agency exists regardless of whether collateral is a "farm product," or "inventory." Conversion lies against the auction agency based on the *debtor's authority to sell the collateral. First National Bank of Amarillo v. SW Livestock, Inc.,* 616 F.Supp. 1515, 1519 (D.C.Kan. 1985); *First National Bank v. Atchison County Auction Co.,* 10 Kan.App.2d 382, 699 P.2d 1032 (1985); *North Central Kan.Prod.Credit Ass'n v. Washington Sales Co.,* 223 Kan. 689, 577 P.2d 35 (1978). *See also Colorado Bank & T. Co. v. Western Slope Invest., Inc.,* 36 Colo.App. 149, 539 P.2d 501 (1975); *Hills Bank & Trust Co. v. Arnold Cattle Co.,* 22 Ill.App.3d 138, 316 N.E.2d 669 (1974); *Wisdom v. Keithly,* 237 Mo.App. 76, 167 S.W.2d 450 (1943).

> "In analyzing the rights of the appealing parties, we start with the common law rule that a factor or commission merchant who receives property from his principal, sells it under the latter's instructions and pays him the proceeds of the sale, is guilty of a conversion if his principal had no title thereto *or right to sell the property,* and generally the factor may not escape liability to the true owner for the value of the property by asserting he acted in good faith and in ignorance of his principal's want of title (32 Am.Jur.2d, Factors and Commission Merchants, § 57b). The basis for the factor's liability if he assists in a conversion, even though innocent, is the fact he stands in the shoes of his principal (*Birmingham v. Rice Bros.,* 238 Iowa 410, 26

N.W.2d 39, 2 A.L.R.2d 1108, cert. den. 332 U.S. 768, 92 L.Ed. 353, 68 S.Ct. 79, reh. den. 332 U.S. 820, 92 L.Ed. 397, 68 S.Ct. 151 [ 1947) ]." (Emphasis supplied).

*First National Bank v. Atchison County Auction Co.,* 699 P.2d at 1038, *quoting Devore v. McClure Livestock Commission Co., Inc.,* 207 Kan. 499, 503, 485 P.2d 1013 (1971).

■ We adopt the reasoning of the Kansas courts and hold that a cause of action in conversion arises from the viewpoint of the debtor's authority to sell the collateral. In this case, the security agreement expressly prohibited removal or sale of the collateral without the written consent of the Bank. Magness's principal breached that provision and Magness, the agent, is liable for interfering with Bank's mortgage interest.

> [I]f in violation of the terms of the agreement the mortgagor or vendee removes, sells, or otherwise disposes of the chattel as his own, both he and, generally, his transferee are liable for the conversion.... Not only are the debtor and transferee liable in such cases, but so, also, is the agent who negotiates the sale and delivers the goods to the transferee pursuant thereto, and it is immaterial that such agent had neither knowledge or notice that the transferor-principal was committing a wrong by the sale.

1 Harper, James & Gray, The Law of Torts, § 2.31 (2d Ed.1986).

■ Magness points out that the federal Packers and Stockyards Act requires all packers, marketing agencies, and dealers to pay sale proceeds to the livestock seller by the close of the next business day following the sale. 7 U.S.C. § 228b (1982). He claims this provision preempts state law. We find no merit in this contention.

We reverse and remand.

MORGAN and HENDERSON, JJ., concur.

SABERS and MILLER, JJ., concur in result.

SABERS, Justice (concurring in result).

I concur in the result only, because, contrary to footnote 2 of the majority opinion, liability of the livestock auction company *is* determined by *Aberdeen Production Credit v. Redfield Livestock,* 379 N.W.2d 829 (S.D.1985). As stated therein at page 832:

> The sale barns, acting as Bellman Farms' agents, had constructive notice ... of security agreements filed pursuant to statute. SDCL 57A–1–201(25) and (26), and SDCL ch. 57A–9. *See also Shelby v. Bowden,* 16 S.D. 531, 94 N.W. 416 (1903); *Parrish v. Mahany,* 10 S.D. 276, 73 N.W. 97 (1897). The sale barns failed to heed that notice at their peril.

Therefore, in the absence of consent or waiver, the sale barn or livestock auction company is liable to the secured creditor for conversion. *Rensch v. Riddle's Diamonds of Rapid City,* 393 N.W.2d 269 (S.D.1986); SDCL 21–3–3.

MILLER, Justice (concurring in result).

I can only concur in the result of the majority decision.

Initially, I disagree that the "main issue" is "whether the livestock sales company is liable for conversion as a matter of law." The real issue, as framed by appellant, is whether the trial court erred in determining that our statute, SDCL 57A–9–307, as interpreted by Comment 4 to U.C.C. § 9–109, exonerates Magness from liability to a secured party having a perfected security interest.

In granting summary judgment on the sole ground raised by Magness, the trial court held that under SDCL 57A–9–109 and Comment 4 to U.C.C. § 9–109, the Vetter livestock lost its status as "farm products" and became "inventory" while in the possession of Magness, thereby extinguishing the security interest claimed by Bank.

A recitation of additional facts is necessary to give a better understanding of the case. Vetter had executed several promissory notes to Bank along with security agreements creating a lien upon his livestock, both presently owned or after acquired. On three occasions in 1984 after the lien was properly perfected, Vetter, without Bank's consent, sold sheep to third parties through Magness.

SDCL 57A–9–307 is clear that a lender's security interest continues in farm products[*] regardless of its sale. In salient part, SDCL 57A–9–307 provides:

> (1) A buyer in the ordinary course of business (subsection (9) of § 57A–1–201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

In statutory construction, we assume statutes mean what they say and we will not enlarge a statute beyond its face where the statutory terms are clear and unambiguous. *American Rim & Brake, Inc. v. Zoellner,* 382 N.W.2d 421 (S.D.1986); *Simpson v. Tobin,* 367 N.W.2d 757 (S.D. 1985); *Petition of Famous Brands, Inc.,* 347 N.W.2d 882 (S.D.1984); *Crescent Elec. Supply Co. v. Nerison,* 89 S.D. 203, 232 N.W.2d 76 (1975).

Appellee and the trial court apparently got sidetracked through a misinterpretation of Comment 4, *supra,* which although referred to in the majority opinion, is not quoted. The paragraph relied upon by appellee and the trial court reads as follows:

> When crops or livestock or their products come into the possession of a person not engaged in farming operations they cease to be 'farm products.' If they come into the possession of a marketing agency for sale or distribution or of a manufacturer or processor as raw materials, they become inventory.

Initially, it should be observed that the official comments were not adopted by the South Dakota Legislature when the UCC was adopted. 1966 S.D.Sess.L. ch. 150. These comments are not the law in this state although we may look to them for guidance. *Appeal of Copeland,* 531 F.2d 1195 (3d Cir.1976); *Johnson v. John Deere Co.,* 306 N.W.2d 231 (S.D.1981); *Drier v.*

---

[*] Livestock are clearly farm products under the definition at SDCL 57A–9–109(3).

*Perfection, Inc.*, 259 N.W.2d 496 (S.D. 1977); *Sherman v. Upton, Inc.*, 90 S.D. 467, 242 N.W.2d 666 (1976).

More importantly, however, for the reasons stated in the majority opinion, the trial court misinterpreted the above-quoted language in Comment 4. Additionally the trial court (and apparently the Eighth Circuit Court of Appeals in the *Progressive* case) disregarded other language appearing later in Comment 4 reading:

Note that the buyer in ordinary course who under Section 9–307 takes free of a security interest in goods held for sale does not include one who buys farm products from a person engaged in farming operations.

I specifically agree with the rationale of the majority opinion in adopting the Kansas reasoning.